### ELLISON v. UNITED STATES.

No. 11628.

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1953.

Decided July 2, 1953.

Mrs. Katherine M. Staley, Washington, D. C., with whom Mr. Jacob Stein, Washington, D. C., was on the brief, for appellant.

Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., with whom Mr. Arthur J. McLaughlin, Asst. U. S. Atty., and Mr. William R. Glendon, Asst. U. S. Atty., Washington, D. C., at the time of argument, were on the brief, for appellee. Mr. Charles M. Irelan, U. S. Atty., Washington, D. C., at time brief was filed, was also on the brief for appellee. Mr. Leo A. Rover, U. S. Atty., and Mr. Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., at time record was filed, also entered appearances for appellee.

Before CLARK, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

After trial in the United States District Court for the District of Columbia, appellant was convicted of housebreaking and larceny. D.C.Code, Title 22, Sections 1801, 2201 and 2202 (1951). In this appeal he attacks the validity of his arrest, and contends it was error to refuse to suppress certain evidence seized at the time of the arrest.

The events leading up to appellant's arrest took place on the morning of July 8, 1952. Joseph Gabrys, a veteran police officer with considerable experience in the enforcement of the narcotics laws, was notified on that morning that a drugstore at the corner of Wisconsin Avenue and Albemarle Street, in northwest Washington, had been broken into and robbed. Gabrys, accompanied by Officer Herring, went to the store and found that a glass door in one of the two main entrances had been shattered by a rock. The officers also found that a quantity of narcotics, as well as of other drug products and cigarettes, had been taken. Gabrys then recalled that "about a year" earlier a similar offense had been committed by James Ellison, the appellant in this case. Gabrys had arrested Ellison for that robbery, which had been accomplished by breaking in the front door of a drugstore with a rock, after which a quantity of narcotics had been taken.[1] Both drugstores and appellant's home were all in the same general area. These things led Officer Gabrys to surmise that appellant might have committed the second robbery. Deciding to follow up this possibility, the two officers went to appellant's home, proceeded up to and on the front porch, and rang the doorbell. Mrs. Ellison, appellant's mother, came to the door. Officer Gabrys spoke to her, identified himself, and asked if appellant was at home. Mrs. Ellison replied that she thought he was, but was not sure. She offered to go upstairs to find out. While waiting on the front porch Officer Herring observed and pointed

---

1. Appellant pleaded guilty to this earlier robbery and served a term of imprisonment for it. Appellant says that the arrest in that case was more than two years prior to the one here in question, but this seems immaterial for present purposes.

out to Gabrys "several bottles—drugstore bottles—of medicine and some cigarettes and other things" lying on the ground near the house. They had the appearance of having been lately placed or left there, as they bore no signs of having been affected by a recent rainfall. The bottles—one large and the others smaller—were of the types found in the prescription departments of drugstores. There were no bottles, however, of the type used for narcotics. Later Mrs. Ellison returned to the door and stated that appellant was in his room on the second floor. Gabrys asked if he could speak to appellant in his room. According to Gabrys, "She at first hesitated to allow me to do that, but she stepped back and then I proceeded on upstairs." [2] Gabrys entered appellant's room and indicated to appellant that he was under arrest. Officer Herring, who also went upstairs, observed a small musical instrument box lying on the floor in appellant's room. Herring opened the box and found a substantial quantity of narcotics. Appellant then stated that this had been obtained from the drugstore at Wisconsin and Albemarle. He showed the officers an additional cache of bottles containing narcotics and said that these, too, had come from the same store. The officers did not have either an arrest warrant or a search warrant.

Prior to trial appellant filed a motion in the District Court to suppress the evidence seized at the time of his arrest. After a hearing, the motion was denied. The main question before us on this appeal is whether the arresting officer had probable cause to believe that the appellant had committed a felony, so as to justify appellant's arrest without a warrant.

Appellant contends that the officers' entry on the premises was a trespass from the moment they stepped on his land, that the viewing of the bottles and cigarettes was an illegal search, and that the product of this illegal search could not be the basis of probable cause. We cannot accept this contention. The officers were perfectly entitled to go to appellant's door, ring the bell, and inquire as to his whereabouts. They were not trespassers in so doing. Nor were they guilty of any impropriety in allowing their eyes to wander while they were waiting on the porch. The bottles and cigarettes were not covered or hidden, though it may have been necessary to bend over the porch rail to see them. There was no intrusion into appellant's privacy. Nor did mere observation constitute a "search." [3] If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him.

Once this evidence is taken into account, we think there was clearly probable cause to believe that appellant was guilty. The heap of bottles and cigarettes on appellant's premises was the very sort of material that the officers knew had been stolen from the drugstore. [4] This, taken with the similar circumstances surrounding appellant's previous offense and the crime freshly committed, pointed directly to appellant. The total might not be sufficient evidence to convict him. But that

---

2. Mrs. Ellison said that the officers took her to see the bottles and other objects, and then followed her back inside the house. Both Mrs. Ellison and the appellant testified that he called down from his bedroom that he would come down when he had dressed, and that the officers should wait for him without coming up.

3. See Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; United States v. Lee, 1927, 274 U.S. 559,

47 S.Ct. 746, 71 L.Ed. 1202; Cradle v. United States, 1949, 85 U.S.App.D.C. 315, 178 F.2d 962, certiorari denied 339 U.S. 929, 70 S.Ct. 624, 94 L.Ed. 1350; cf. Fisher v. United States, 1953, — U.S. App.D.C. —, 205 F.2d 702; also United States v. Lefkowitz, 1932, 285 U.S. 452, 465, 52 S.Ct. 420, 76 L.Ed. 877.

4. Compare Shew v. United States, 4 Cir., 1946, 155 F.2d 628, certiorari denied 328 U.S. 870, 66 S.Ct. 1381, 90 L.Ed. 1640.

amount of proof is not required to justify an arrest. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Washington v. United States, 1953, —— U.S.App.D.C. ——, 202 F.2d 214, certiorari denied 345 U.S. 956, 73 S.Ct. 938. What is required is enough facts to show that guilt is probable. We think that level was reached in this case.

This brings us to appellant's remaining contention: that the entry into the house was an invasion of his rights. Here, too, we must rule against him. If there was probable cause to make an arrest—as we hold there was—there was justification for at least the peaceable entry which here was made. Martin v. United States, 4 Cir., 1950, 183 F.2d 436, certiorari denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654; Morton v. United States, 1945, 79 U.S.App.D.C. 329, 147 F.2d 28, certiorari denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428. There is no need to determine whether consent was given: here the entry was proper regardless of consent.[5]

The entry and the arrest being proper, the search incident to the arrest was likewise justified. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The evidence was therefore admissible, and the motion to suppress was properly denied.

Courts are justified in holding police officers to a high standard of conduct in their dealings with citizens, and in reversing convictions where there has been a failure to observe those standards, in violation of constitutional or statutory protections. But we must remember that the Constitution prohibits only those searches which are "unreasonable." Here the officers' conduct was entirely reasonable from start to finish. They were reasonable in their initial suspicion that Ellison had committed the second crime; reasonable in endeavoring to locate him for questioning; reasonable in thinking their suspicions confirmed by the objects seen on his grounds; and reasonable in undertaking

the arrest and search, after he had been made aware of their presence. To have left appellant at large in the house while one or both of the officers went to obtain an arrest warrant and a search warrant might perhaps be said to have been reasonable also, in spite of the risk of escape and destruction of evidence which that course would have entailed: but we certainly cannot say that the course which the officers did take was either unreasonable or forbidden by law. "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case." United States v. Rabinowitz, supra, at page 66 of 339 U.S. at page 435 of 70 S.Ct., 94 L.Ed. 653. Here the total atmosphere—the total situation—is such as to lead us to sustain the officers' action.

For these reasons, the judgment of conviction will be

Affirmed.

---

5. Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649, and Nueslein v. District of Columbia, 1940, 73 App.D.C. 85, 115 F.2d 690, relied on by appellant, are therefore not relevant.