George A. CHRISTENSEN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14377.

United States Court of Appeals
District of Columbia Circuit.

Argued June 27, 1958.

Decided Aug. 28, 1958.

Petition for Rehearing In Banc Denied
Sept. 24, 1958.

Mr. Harold J. Nussbaum, Washington, D. C., with whom Mr. Nathan M. Lubar, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Harry T. Alexander, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Carl W. Belcher and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee. Mr. Louis M. Kaplan, Asst. U. S. Atty., also entered an appearance for appellee.

Before MADDEN, Judge, United States Court of Claims,* and BAZELON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant was convicted of housebreaking, larceny and unlawful possession of dangerous drugs.[1] Unidentified informants described and identified appellant to police and told where he could be found selling the stolen drugs. Upon going to the place fixed by the "tip", a police plainclothesman found appellant going from place to place engaging persons in whispered conversation. Shortly thereafter appellant was seen to carry a small brown paper bag through the restaurant, and set it down while he put on his coat. This bag had been observed by the officer near appellant's feet as he sat at one table. He was arrested before he picked the bag up again, and

---

* Sitting by designation pursuant to the provisions of Sec. 291(a), Title 28, U.S. Code.

1. Sodium phenobarbital, sodium pentabarbital and dextro amphetamine sulfate.

when directed to take the bag he denied ownership, possession or any knowledge of the bag or its contents. The bag's contents were identified by a doctor as drugs stolen from his office. Before and on trial appellant claimed illegal search and seizure and moved to suppress and urges that point here. He also urges that there was no proof that the articles under dispute were in fact those stolen or that he had ever had possession of them.

The threshold question is whether there was probable cause to arrest appellant in these circumstances; if there was, his arrest and any seizure incident thereto were lawful. Cf. Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751. In determining whether there was probable cause for the arrest, we must view the situation as it appeared to "the eyes of a reasonable, cautious and prudent peace officer under the circumstances of the moment." Bell v. United States, 1958, 102 U.S.App.D.C. 383, 254 F.2d 82, 86. Taking into account the detailed description of appellant secured through the advance "tip" along with the detective's observations of appellant's appearance and conduct at the restaurant,[2] we hold that there was probable cause for the officer to make the arrest. We cannot view the advance "tip" information and the observations of the police detective in two separate, logic-tight compartments. Neither one standing alone would constitute probable cause, but together they composed a picture meaningful to a trained, experienced observer.

The property which the appellant claims was illegally seized from him was taken incident to this lawful arrest.[3] Hence there are only two issues remaining with respect to this property: (a) whether it was in fact the stolen property and (b) whether it was in fact in the possession of appellant. The jury resolved both these issues adversely to appellant, and its finding is conclusive here.

█ Urging that there was insufficient evidence to support the first of these two factual conclusions, appellant also claims that a three-week interval between a theft and his arrest in possession of the stolen goods is too long to support the inference that the possession is guilty possession.[4] We agree with Boehm v. United States[5] that while the passage of time weakens the inference of guilt, the question whether or not to make the inference was for the jury.

Affirmed.

BAZELON, Circuit Judge (dissenting).

I would reverse the judgment and remand the case for a new trial because appellant's conviction was based on evidence obtained in violation of his constitutional right to be free from unreasonable search and seizure. A somewhat fuller statement of the facts is necessary to clarify the issues.

A police officer had received information from an undisclosed informer that two persons responsible for a housebreaking would be in a certain restaurant at a certain time "peddling" the loot. The informer described the persons and said that one of them would have a paper bag containing the stolen property. Some of the information reached the officer by telephone. How the rest of it was supplied—whether by the informer in person, through an intermediary, or in writing—the record does not show.

At the time specified by the informer, the officer went to the restaurant. When he entered he saw the appellant, who answered the description of one of the men referred to by the informer, sitting at the bar in conversation with two other men. After a while the two men left and ap-

---

**2.** Cf. Ellison v. United States, 1953, 93 U.S.App.D.C. 1, 206 F.2d 476.

**3.** Cf. Williams v. United States, 1956, 99 U.S.App.D.C. 161, 237 F.2d 789, where the seized property was indisputably in the defendant's possession after what was held to be an illegal arrest.

**4.** See Gilbert v. United States, 1954, 94 U.S.App.D.C. 321, 215 F.2d 334.

**5.** 2 Cir., 1921, 271 F. 454.

pellant moved down to the end of the bar, sat down next to another man and conversed with him. The various conversations were in low tones and were not overheard by the officer. As appellant was rising to leave, the officer saw him lean down and take a paper bag from the floor at his feet and walk with it to the coat-rack. Then he saw appellant lay the bag on a radiator so he could put on his coat. Thereupon the officer arrested appellant and took possession of the bag. Under examination by the appellant, the officer testified:

"Q. When you arrested me did I have the bag on my person? A. Within your control.

"Q. On my person? Did I have it in my hand or anywhere on my body? A. I think when I first walked up to you your hand was still on the bag.

"Q. You have testified previously I was putting my coat on—

"The Court: Let him answer.

"The Witness: This happened in a matter of less than a second. As I approached you I thought you were going to make the door and you stopped and reached up for the coat with one hand and reached over and laid the bag down with the other hand and at that time you turned around and saw my badge and your hand came off the bag about the same instant."

All of the foregoing facts were brought out by the testimony of the arresting officer in the Government's case in chief.

Before the trial the appellant had filed a motion to suppress the evidence taken by the officer. Both in the motion and the supporting affidavit, he had denied any connection with the property sought to be suppressed. The motion was denied "without prejudice" upon a ground not

disclosed by the record. At the trial, after testimony by the arresting officer detailing the circumstances of the arrest and the taking of the bag, as set forth above, the Government offered the contents of the bag in evidence. Appellant objected to the offer upon the ground, among others, that the bag had been seized pursuant to an illegal arrest. The trial judge overruled the objection, saying that the arrest was legal and that, even if it were not, he would receive the evidence. It is not clear whether the judge held that appellant lacked standing to object. He did, however, clearly hold the arrest to have been legal.[1]

The Government makes two contentions on this appeal: (1) that appellant lacked standing to attack the legality of the means by which the evidence was obtained; and (2) that, even if appellant had such standing, the evidence was legally obtained as an incident of a valid arrest. My brethren, choosing to call the Government's second contention a "threshold question", hold that the evidence was legally obtained and do not reach the standing issue. It would seem that, if either of the Government's contentions presents a "threshold question", it is the contention that appellant had no standing to attack the evidence. Moreover, I disagree with the majority's holding that the arrest was lawful, so that the validity of the conviction necessarily turns, in my view, upon the question of standing. I shall therefore express my views on both questions.

I. *The Standing Question*

The Fourth Amendment confers a "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Things taken in violation of this right are to be excluded from

---

1. The precise ruling was: "There is no question as to the legality of the arrest, and if there were it would have no bearing on the admissibility." Earlier he had said: " * * * the Court holds that the arrest was legal, but whether it was legal or not is not the question to be determined at this trial." Cf. the ruling by the same judge reviewed by us in Wrightson v. United States, 1955, 95 U.S.App.D.C. 390, 394–395, 222 F.2d 556, 560–561.

evidence. Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.[2]

We have said "the settled doctrine is that objection to evidence obtained in violation of the prohibition of [the Fourth] Amendment may be raised only by one who claims ownership in or right to possession of the premises searched or the property seized * * *." Gibson v. United States, 1945, 80 U.S.App.D.C. 81, 84, 149 F.2d 381, 384. Assuming the correctness of this doctrine, which is the doctrine uniformly held by the lower federal courts,[3] both fairness and logic require that we limit it to the situations exemplified by Shore v. United States, 1931, 60 App.D.C. 137, 49 F.2d 519. In that case there was a challenge to the propriety of police conduct in opening two trunks in the office of an express company. The trunks, which contained contraband liquor, were consigned to one Willoughby care of defendant Shore. Shore, who denied that he knew Willoughby and claimed no interest in the trunks or their contents, was held to be without standing to suppress the evidence. That holding makes sense. To hold otherwise would mean that, when there is a search and seizure in a public or semi-public place, anyone in the world, even a stranger to the property found, has standing to take it from the officers' possession. Similarly, when gambling paraphernalia are seized in a raid on a gambling house, while a person claiming possession of the premises has standing to suppress the evidence. Washington v. United States, 92 U.S.App.D.C. 31, 202 F.2d 214, certiorari denied, 1953, 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377, those claiming no interest in either the premises or the property have no standing, ibid., Gorland v. United States, 1952, 91 U.S.App.D.C. 90, 197 F.2d 685.[4]

But what logic is there in an inquiry into the ownership of either the premises or the property in a case where the circumstances of the search and seizure preclude the possibility of third party interest, e.g., when the property is taken from the person of the defendant? The Fourth Amendment forbids unreasonable search of "persons" as well as their "houses." If a person is unreasonably searched, his constitutional right has been violated. Anything taken from him should therefore be suppressed or returned under Weeks.

In Harvey v. United States, 90 U.S. App.D.C. 167, 193 F.2d 928, certiorari denied, 1952, 343 U.S. 927, 72 S.Ct. 760, 96 L.Ed. 1337, defendant filed a pretrial motion to suppress, alleging that "he is informed that [certain] articles were allegedly seized and removed from his person * * *."[5] At the hearing on the motion the facts were stipulated: that

2. Rule 41(e), Fed.Rules Crim.Proc. 18 U.S.C.A., codifying pre-existing law, authorizes a motion by the "person aggrieved" for the return and suppression of the thing seized. It provides that the motion shall be made before trial unless opportunity was lacking or the defendant was not aware of the grounds for the motion. But, if the motion is not made before trial, it may, in the discretion of the court, be entertained at the trial.

3. While noting that "the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized," the Supreme Court pointed out that it "has never been called upon to decide the point * * *." Goldstein v. United States, 1942, 316 U.S. 114, 121, 62 S.Ct. 1000, 1004, 86 L. Ed. 1312. See, however, McDonald v. United States, 1948, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153:

"Even though we assume, without deciding, that Washington, who was a guest of McDonald, had no right of privacy that was broken when the officers searched McDonald's room without a warrant, we think that the denial of McDonald's motion was error that was prejudicial to Washington as well."

4. For other instances of lack of standing where the search was of premises belonging to another and where there was no claim of interest in the seized property, see Gaskins v. United States, 1955, 95 U.S.App.D.C. 34, 218 F.2d 47; Gibson v. United States, 1945, 80 U.S. App.D.C. 81, 149 F.2d 381.

5. The facts, for the most part omitted from the court's opinion, are drawn from the record on appeal.

the police searched the defendants when they arrested them and found the articles on their persons. The motion was denied, not for lack of standing, but on the ground that the search and seizure were reasonable because incidental to a valid arrest. At the trial the Government adduced evidence that the articles had been taken from defendants' pockets and the articles were then received in evidence over defendants' objections. Thereafter, testifying on their own behalf, the defendants denied that the articles had been taken from them.[6] On appeal this court sustained the validity of the search and seizure and then went on to say that the defendants lacked standing to object. The court stated:

> "They never claimed that it was seized by the police, or that they owned or possessed it. On the contrary, at the trial they denied possession or seizure of the articles. They sought to have the court and jury believe that they were victims of a 'frame-up' by the police. Under these circumstances we think they *now* have no standing *here* to contest their convictions upon the basis of a seizure which they deliberately denied." 90 U.S.App.D.C. at pages 167–168, 193 F.2d at page 928. [Emphasis supplied.]

It seems to me the court missed the point in Harvey. The question was not whether the defendants had standing *on appeal* to challenge the seizure, but rather whether they had standing *below* when they made their challenge. The District Court, as I have pointed out, had found, or at least assumed, that they had standing when they moved for suppression. The significant facts are those that appeared of record when the District Court acted. The motion to suppress was denied on a stipulation that the articles had been taken from defendants' persons. And when the defendants' objection to the evidence was overruled the state of the record was that there was uncontradicted testimony by the Government's own witnesses that the articles had been taken from defendants' pockets. The defendants had not yet testified in their own defense that the seizure was a "frame-up." In that state of the record, it would seem, the District Court had no alternative but to find standing, for, as the Supreme Court said in Amos v. United States, 1921, 255 U.S. 313, 316–317, 41 S.Ct. 266, 267, 65 L.Ed. 654, "The facts essential to the disposition of the motion were not and could not be denied; they were literally thrust upon the attention of the court by the government itself."

That the defendant has standing to object in such circumstances was established in Williams v. U. S., 1956, 99 U.S.App.D.C. 161, 237 F.2d 789, petition for rehearing in banc denied, see infra.

The philosophy of the Harvey decision, it seems to me, is that the exclusionary rule of Weeks is to be denied application in any case except where the defendant affirmatively confesses the possession of the seized evidence. It springs from a disposition to limit Weeks wherever possible. The standing requirement has been called "the most devitalizing force" in limiting the Weeks rule.[7] The more onerously we apply the requirement the more we devitalize Weeks. Where it is clear from the circumstances that the defendant's constitutional right to be free from unreasonable search and seizure has in fact been violated, a requirement that, as a condition to excluding the product of the search, the victim must affirmatively admit possession of the article, which in the case of contraband amounts to confessing guilt, is an obvious,[8] even if not avowed, abandonment

---

6. In the instant case, appellant did not testify on his own behalf, but sought to prove through witnesses he called that the property which the officer had claimed to have taken from him and which had already been received in evidence against him had never been in his possession.

7. Grant, Circumventing the Fourth Amendment, 14 S.Cal.L.Rev. 359, 368 (1941); Comment, 55 Mich.L.Rev. 567, 569 (1957).

8. See, e. g., Accardo v. United States, 101 U.S.App.D.C. 162, 247 F.2d 568, certio-

of Weeks. We place the victim of the search upon the horns of a dilemma. If he does not claim possession of the seized contraband, we allow it to be used in evidence against him. If he does claim possession of the contraband, we let his own claim convict him.[9]

To be sure, the Fourth Amendment right to be free from unreasonable search and seizure is a right that may be waived. Zap v. United States, 1946, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477. So also is the Fifth Amendment right not to be compelled to incriminate one's self. Powers v. United States, 1912, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448. But a rule which *compels* the defendant to forego one of his two constitutional rights as a condition to exercise of the other is, in my opinion, invalid.

Whether the use against a person of evidence seized from him in violation of his Fourth Amendment right violates his Fifth Amendment right against self-incrimination, as the Supreme Court has often held,[10] does not now concern us. It is enough to note the "intimate relation between the two amendments." Boyd v. United States, 1886, 116 U.S. 616, 633, 6 S.Ct. 524, 534, 29 L.Ed. 746. As we pointed out in Nueslein v. District of Columbia, 1940, 73 App.D.C. 85, 88, 115 F.2d 690, 693, the two amendments "relate to different issues, but cases can present facts which make the considerations behind these Amendments overlap." The question that presents itself has been framed by one commentator in the following terms:

"If the Fourth Amendment and the Self-Incrimination Clause of the Fifth Amendment actually throw light upon each other, and if each must be interpreted with regard to the demands of the other, with what justification may the courts employ the requirement of standing to force the possessor of contraband to elect one right at the cost of surrendering the other?" [11]

The only justification that can be offered is that forcing the election prevents criminals from using constitutional points to avoid punishment.

rari denied, 1957, 355 U.S. 898, 78 S.Ct. 273, 2 L.Ed.2d 195, where we withheld the benefit of the Weeks rule *even though the defendant claimed ownership of the two suitcases which were the product of the search*, because he did not also admit ownership of the contents. We cited with apparent approval the dictum from Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629, 630, to the effect that the victim of an unconstitutional search must confess if he wishes to exclude the unlawfully seized evidence.

9. Whether the allegations of a motion to suppress or the testimony in support thereof are admissible against the movant at his trial is a question never squarely decided by this court. See Wilkins v. United States, 103 U.S.App.D.C. 322, 258 F.2d 416; Jones v. United States, 103 U.S.App.D.C. 326, 258 F.2d 420. The Eighth Circuit has held that, where the motion has been sustained, neither it nor the supporting testimony are admissible against the defendant at the trial. Safarik v. United States, 8 Cir., 1933, 62 F.2d 892. Where the motion has been overruled, however, it has been held to be admissible against the movant at his trial. Fowler v. United States, 10 Cir., 1956, 239 F.2d 93; Kaiser v. United States, 8 Cir., 1932, 60 F.2d 410; Heller v. United States, 7 Cir., 57 F.2d 627, certiorari denied, 1932, 286 U.S. 567, 52 S.Ct. 647, 76 L.Ed. 1298. In the Heller case, the majority opinion made no distinction between situations where the motion has been overruled and those where it has been sustained. The majority's position, as Judge Evans pointed out in his concurring opinion, makes it possible for the Government always to benefit from an illegal search: by introducing the evidence if not suppressed; or by introducing the defendant's claim of possession if the evidence is suppressed.

10. Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Gouled v. United States, 1921, 255 U.S. 298, 41 S. Ct. 261, 65 L.Ed. 647; Amos v. United States, 1921, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; but see Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

11. Edwards, Standing to Suppress Unreasonably Seized Evidence, 47 N.W.L.Rev. 471, 487 (1952).

This is obviously what Judge Learned Hand meant when he said: "If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma." Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629, 630. And this purported justification underlies Harvey and the various other decisions in which this court has imposed what, in my view, were overly-stringent standing requirements.[12] But the justification does not justify, for criminals are not beyond the constitutional pale. "This protection [against unreasonable searches and seizures] reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." Weeks v. United States, 232 U.S. at page 392, 34 S.Ct. at page 344.

The dilemma inflicted upon the victims of unconstitutional searches and seizures has been sought to be imposed also upon the victims of coerced confessions. It has been argued that a defendant who denies having made and signed a written confession which is sought to be introduced in evidence against him lacks standing to urge that the confession was coerced and that receiving it in evidence would violate his right to due process of law. The Supreme Court answered this argument in White v. State of Texas, 1940, 310 U.S. 530, 532, 60 S.Ct. 1032, 1033, 84 L.Ed. 1342:

"But regardless of petitioner's testimony on this question, the State insisted and offered testimony to establish that the confession was signed by him and upon this evidence the confession was submitted to the jury for the purpose of obtaining his conviction. Since, therefore, the confession was presented by the State to the jury as that of petitioner, we must determine whether the record shows that, if signed at all, the confession was obtained and used in such manner that petitioner's trial fell short of that procedural due process guaranteed by the Constitution."

Thus, when the prosecution claims through its witnesses that the police have taken words from the defendant's mouth, he has standing to attack the manner of the taking without giving up his right to persuade the jury that the words were in fact not his and prove nothing against him. Why then, when the prosecution adduces proof that the police have taken physical evidence from him, should he not have similar standing?

The operation of the stringent standing requirement in search and seizure cases is illustrated in Wyche v. United States, 1951, 90 U.S.App.D.C. 67, 193 F.2d 703, certiorari denied, 1952, 342 U.S. 943, 72 S.Ct. 556, 96 L.Ed. 702. Wyche entered a gambling house while a police raid was in progress. The police searched him and found numbers slips on his person. Defense counsel, as the majority opinion notes, "not only disclaimed any desire to enter a motion to suppress the evidence, but he also gave specific reasons for his disclaimer. He stated that a motion to suppress evidence would require a claim to a property right in the things seized, and asserted that he was making no such claim." 90 U.S. App.D.C. at page 69, 193 F.2d at page 704. But, as Judge Fahy pointed out in his concurring opinion, when the prosecution offered the seized evidence, defendant counsel made "[s]easonable and adequate objection." 90 U.S.App.D.C. at

---

12. See, for example, Accardo v. United States, supra, note 8.

page 70, 193 F.2d at page 705. Counsel was obviously not waiving Wyche's constitutional right to be free of unreasonable search and seizure. He was only seeking to avoid the alternative of confessing the possession of numbers slips, one of the crimes with which Wyche was charged.[13] Yet the majority held, in substance, that the constitutional right had been waived by failure to move for suppression. I think Judge Fahy was clearly right in concluding: "Wyche was aggrieved (Rule 41(e)) because the search was of his person. He therefore had standing to object to its admission without asserting ownership of the property seized." Ibid. Any other conclusion would be illogical and could spring only from a desire to make it impossible for Wyche to assert his constitutional rights.

In Williams v. United States, 1956, 99 U.S.App.D.C. 161, 237 F.2d 789, petition for rehearing in banc denied, where the defendant had actually denied ownership of the contraband rather than merely failing to claim ownership, the court reached the same conclusion that Judge Fahy alone had reached in Wyche. We said:

> "In a pre-trial motion to suppress appellant had disclaimed ownership of the capsules. But when his objection to their admission was renewed and acted upon at the trial itself the unchallenged testimony of the prosecution showed that the capsules were in appellant's possession until he dropped them, thus giving him standing to object."

Thus, where the Government's own proof at the trial shows that the defendant was the victim of an unconstitutional search and seizure, the following conclusions may be stated:

(1) Under Williams, supra, the defendant has standing to object to the evidence seized even if, on a pre-trial motion to suppress, he has denied ownership of it.

(2) Under Judge Fahy's opinion in Wyche, the defendant would have standing to object even if he had not made a pre-trial motion to suppress.

Both of these conclusions, I submit, are supported by the decisions of the Supreme Court.

In Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, the circumstances of an unreasonable search of the defendant's home and the seizure of a can of cocaine were recounted in the Government's case in chief. The evidence was excluded because the search was without a warrant. Thereafter, testifying in his own behalf, the defendant denied that he had ever seen the can of cocaine.[14] On rebuttal, the Government offered the evidence again and it was received. The Supreme Court, reversing the conviction, said:

> "The government contends that, even if the search and seizure were unlawful, the evidence was admissible because no application on behalf of defendant was made to the court for the return of the can of cocaine. The reason for such application, where required, is that the court will not pause in a criminal case to determine collateral issues as to how the evidence was obtained. See Adams v. People of State of New York, 192 U.S. 585, 594, 24 S.Ct. 372, 48 L.Ed. 575, affirming 176 N.Y. 351, 68 N.E. 636, 63 L.R.A. 406. But, in this case, the facts disclosing that the search and seizure violated the Fourth Amendment were not in controversy. They were shown by the examination of the witness called to give the evidence. There was no search warrant, and from the first the position

---

13. In Harvey, supra, counsel sought to avoid the alternative by moving to suppress, but alleging in the motion not that the property had been taken from Harvey, but only that it had been "allegedly seized" from him. This device proved as unavailing as the course pursued by Wyche's counsel.

14. Cf. Harvey v. United States, supra.

of the government has been that none was necessary. In substance, Frank Agnello testified that he never had possession of the can of cocaine and never saw it until it was produced in court. There is nothing to show that, in advance of its offer in evidence, he knew that the government claimed it had searched his house and found cocaine there, or that the prosecutor intended to introduce evidence of any search or seizure. It would be unreasonable to hold that he was bound to apply for the return of an article which he maintained he never had. Where, by uncontroverted facts, it appears that a search and seizure were made in violation of the Fourth Amendment, there is no reason why one whose rights have been so violated, and who is sought to be incriminated by evidence so obtained, may not invoke protection of the Fifth Amendment immediately and without any application for the return of the thing seized." 269 U.S. at page 34, 46 S.Ct. at page 7.

True, the Court referred to the fact that the record failed to show that Agnello had the necessary information for a pre-trial motion. But it cannot tenably be argued that the decision rested on that fact. Four years earlier, in Amos v. United States, 1921, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, the Court was asked to sustain a conviction based on illegally seized evidence because the defendant had not sought to suppress the evidence until after commencement of trial. No claim was made that the defendant was unaware before trial of the grounds for suppression. The Court rejected the Government's argument:

"There is nothing in the record to indicate that the allegations of the petition for the return of the property, sworn to by the defendant, were in any respect questioned or denied, and the report of the examination and appropriate cross-examination of the Government's witnesses, called to make out its case, shows clearly the unconstitutional character of the seizure by which the property which it introduced was obtained. The facts essential to the disposition of the motion were not and could not be denied; they were literally thrust upon the attention of the court by the government itself. The petition should have been granted * * *. 255 U.S. at pages 316–317, 41 S.Ct. at page 267.

The purpose of Rule 41(e)'s requirement of a pre-trial motion to suppress "is to prevent, so far as possible, the delay and attendant confusion resulting from attacks during a trial on the admissibility of illegally seized evidence; a trial would have to be interrupted and the jury recessed while the court heard the motion to suppress." Waldron v. United States, 1955, 95 U.S.App.D.C. 66, 69–70, 219 F.2d 37, 41. Where the inadmissibility of the illegally seized evidence readily appears from the Government's own case without any need for interrupting the trial, it is pointless to deny the defendant the right to exclude the evidence merely because he has not instituted a pre-trial proceeding. While the requirement of a pre-trial motion "is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances." Gouled v. United States, 1921, 255 U.S. 298, 312, 41 S.Ct. 261, 266, 65 L.Ed. 647. Our concern is with the protection of the individual's constitutional rights. The rules are designed for that purpose, not for the purpose of devitalizing those rights. Since, as the Court said in Gouled, ibid., the rules are "to be used to secure the ends of justice under the circumstances presented by each case," the District Court should entertain a challenge to evidence whenever, in the progress of the trial, it becomes apparent that the evidence was obtained in violation of the defendant's constitutional rights.

In the instant case, as I have shown, when appellant's objection to the evidence was made, the record showed, through the uncontradicted testimony of the arresting officer testifying on behalf of the Government, that the evidence in question had been taken from appellant by the officer when the arrest was made. Appellant therefore had standing to object. And since, as I shall now show, the seizure [15] was unreasonable, the objection should have been sustained.

## II. *The Validity of the Arrest*

Possessing the loot from a housebreaking and attempting to sell it justify arrest. Conduct which gives a reasonable, cautious and prudent police officer probable cause to believe that the defendant possesses and is attempting to sell the loot justifies arrest. But perfectly normal, unsuspicious conduct cannot give an officer probable cause to believe that the individual is guilty of the crime and therefore cannot justify arrest.

From nothing observed by the officer in the instant case could there arise probable cause to believe that appellant had committed the housebreaking. The officer did not see the stolen property. He did not see appellant "peddling" it. He could not hear the conversations between appellant and the other men at the bar. Surely, talking to acquaintances at a bar and holding a small paper bag—all that the officer did observe—are not such conduct as to arouse suspicion, let alone furnish probable cause to believe that a crime has been committed.[16]

Some crimes involve a characteristic pattern of conduct [17] which may be meaningful to a "trained, experienced observer," while seeming perfectly innocent to the untrained layman. In Mills v. United States, 1952, 90 U.S.App.D.C. 365, 367, 196 F.2d 600, 602, for example, this court said that the officers observed events constituting what they "doubtless knew was the requisite procedure in the picking up of numbers slips." And in Bell v. United States, 1958, 102 U.S.App. D.C. 383, 254 F.2d 82, 86, the court said: "An officer experienced in the narcotics traffic may find probable cause in the smell of drugs and the appearance of paraphernalia which to the lay eye is without significance." But it cannot be suggested that there is anything about the crime of housebreaking by reason of which appellant's conduct could have had any more significance for an experienced police officer than for the ordinary lay observer. Indeed, the Government does not contend that anything the officer observed gave him probable cause to make the arrest. It concedes, moreover, that the information the officer received from the informer did not justify the arrest. The Government argues, however, that the observations and the information together did justify the arrest.

But what was there in what the officer learned from the informer which, added to what he saw, could convert apparently innocent behavior into behavior justifying arrest? The information was that the bag contained the loot and that the conversations were attempts to sell it. This information, if the record shows a reasonable basis for relying on it, would have significantly supplemented the officer's own observations. But without some showing that the information was reliable, the officer's mere testimony that he had received it does not help to justify

15. The Government argues that even if the arrest was illegal, there was no "seizure" of the bag because when the officer, after arresting appellant, ordered him to pick up the bag, appellant disclaimed ownership of it. That argument is disposed of by Williams v. United States, 1956, 99 U.S.App.D.C. 161, 237 F.2d 789.

16. Cf. Bell v. United States, 1958, 102 U.S.App.D.C. 383, 254 F.2d 82, where the officers saw appellant drive away from a store at three o'clock in the morning without lights in a car containing forty cartons of cigarettes.

17. See Simmons v. United States, 1953, 92 U.S.App.D.C. 122, 123, 206 F.2d 427, 429.

the arrest. Wrightson v. United States, 1955, 95 U.S.App.D.C. 390, 394, note 12, 222 F.2d 556, 560, note 12; Contee v. United States, 1954, 94 U.S.App.D.C. 297, 299, 215 F.2d 324, 327. The information that an officer may rely on as justifying an arrest, as we said in the second Wrightson appeal, is information that is shown to have come from "an informer whom he knew, and in whom he had confidence." Wrightson v. United States, 1956, 98 U.S.App.D.C. 377, 378, 236 F.2d 672, 673; see also Husty v. United States, 1931, 282 U.S. 694, 700, 51 S.Ct. 240, 75 L.Ed. 629. Whether the informer in this case was anonymous as in Contee, supra, and in Worthington v. United States, 6 Cir., 1948, 166 F.2d 557, or was known to the officer does not appear from the record. It appears, however, that the officer did not vouch for the informer as reliable on the basis of past performance or on any other basis. We said in Coupe v. United States, 72 App. D.C. 86, 88–89, 113 F.2d 145, 147–148, certiorari denied, 1940, 310 U.S. 651, 60 S.Ct. 1105, 84 L.Ed. 1417: "Discovery of the automobile and persons described in a 'tip' from *a source known to be reliable*, at the place indicated by the informant, is at least significant, if not sufficient." [Emphasis supplied.] But, absent any showing of the informer's reliability, his tip is not even significant, let alone sufficient, as a basis for arrest. Without such a showing, the arrest rests upon the accusation of an unrevealed informer, motivated by we know not what personal spite, rather than upon the belief of a reasonable, cautious and prudent police officer. The right to be let alone by the police, which is enjoyed by every American and which distinguishes him from the inhabitant of a police state,[18] may not be so easily set aside.

I conclude that appellant was arrested without probable cause. The incidental seizure of the bag was therefore unreasonable.

---

18. See my dissent in Porter v. United States, 103 U.S.App.D.C. 393, 258 F.2d 693.