**UNITED STATES of America,**

v.

**Gus CATANZARO, a/k/a David Winston, Matthew Massimo, a/k/a Richard Ward, and Philip J. Morfield, Defendants.**

**No. 68 Cr. 9.**

United States District Court
S. D. New York.

April 4, 1968.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, for the United States; Lars I. Kulleseid, Asst. U. S. Atty., of counsel.

Joshua N. Koplovitz, New York City, for defendant Morfield.

DECISION

WEINFELD, District Judge.

The court finds that the postal inspector gave a substantially accurate version of the events related by him. The court finds he was engaged in a routine investigation relative to an alleged fraudulent use of the mails involving credit cards. Information pre-

viously obtained by the inspector warranted questioning the defendant as to his knowledge of matters that had come to the inspector's attention. When first interrogated during the course of this normal inquiry, the defendant "gladly" and voluntarily consented to questioning by the inspector at the post office—indeed, as one witness put it, the defendant was "more than willing" to go with them. While it appeared that defendant might have some information which could shed light on the matter under investigation, he was not then the target of the inquiry. Defendant was not in custody; he understood he was not in custody, and that he was free to accompany or refuse to accompany the postal inspector, and he was not deprived of his freedom in any meaningful way.

At the post office, the defendant freely and voluntarily offered information in a spirit of cooperation. However, when it appeared to the postal inspector that some of the defendant's statements indicated he might have been involved in the matter under inquiry, the inspector, with commendable regard for defendant's rights, forthwith stopped questioning him; thereupon, he fully advised defendant of his constitutional rights in compliance with the mandate of *Miranda*.

■ That thereafter, fully understanding his rights, the defendant intelligently waived them and consented to further questioning, during the course of which he voluntarily gave specimens of his handwriting to the inspector. Insofar as the motion to suppress seeks the return of these specimens, it is denied.

■ Subsequently, when authorization had been obtained from the Assistant United States Attorney to arrest the defendant upon the view that there was probable cause to believe he and others had violated federal laws, the defendant requested the officers to permit him to effect a change of clothes before his arraignment. The evidence fully establishes that thereafter, for that purpose, and also to turn over clothing and other merchandise which defendant volunteered to surrender and which he said had been given to him by others allegedly obtained by them through the use of credit cards, the defendant invited the postal inspector and two associates into his apartment; that while in the apartment, the defendant selected and voluntarily delivered to the postal inspector those items. These are not subject to return and the motion to suppress with respect thereto is denied.

While the defendant was engaged in selecting the clothing and other items which he so voluntarily surrendered, the agent or the others with him searched other parts of the apartment and came across Government Exhibit 2, a draft card, and Government Exhibit 3, a Korvette employee tag bearing the name Peter Montoyo. The government offers no objection to the return of these exhibits, and they are ordered returned.

■ One final item remains. While the defendant was searching for and removing from the closet the items which he voluntarily turned over, the inspector noticed a Springfield rifle on a wall rack, and recalled from his investigation the repair of such a rifle under a credit card; he observed the serial number on the rifle matched that of the one repaired through use of the credit card, whereupon he seized the rifle as evidence.

The inspector and his companions were lawfully present in the defendant's apartment pursuant to the express invitation of the defendant. Discovery of the rifle required no search and no intrusion into defendant's privacy beyond that to which he had expressly consented. The inspector was not precluded from observing what was clearly and plainly to be seen.[1] Having seen the rifle, the in-

1. See Chapman v. United States, 346 F. 2d 383 (9th Cir.), cert. denied, 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965); United States v. Saka, 339 F.2d 541, 544 (3d Cir. 1964); Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476 (1953).

spector properly scrutinized it more carefully, thereby confirming his suspicions that it was part of the fruit of the alleged crime. That he was required to examine it more closely to identify the serial number did not transform a mere observation into an unconstitutional search. " * * * mere observation [does not] constitute a 'search.' If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him." [2]

The motion to suppress with respect to the rifle is denied, and it is not subject to return.

2. Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476, 478 (1953).