UNITED STATES, Appellee,

v.

Private First Class, John L. MORRISON,
SSN 261–41–4912, United States
Army, Appellant.

CM 435700.

U. S. Army Court of Military Review.

31 May 1978.

Captain Demmon F. Canner, JAGC, Captain John Richards Lee, JAGC, Captain

John D. Lanoue, JAGC, USAR, and Captain Jacob J. Holeman, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major Steven M. Werner, JAGC, and Captain Richard A. Canatela, JAGC, were on the pleadings for appellee.

Before CLAUSE, DRIBBEN and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

DRIBBEN, Judge:

Appellant was convicted, contrary to his pleas, of attempted robbery and five instances of robbery in violation of Articles 80 and 122, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 922. The sentence, imposed by a general court-martial with members and approved by the convening authority, extended to a dishonorable discharge, confinement at hard labor for eight years, forfeiture of all pay and allowances, and reduction to Private E–1.

In seeking reversal of his conviction, appellant urges upon us five claims of error. Two of them merit discussion.

I

Before this Court, as he did at trial in the form of a motion for appropriate relief, appellant challenges the admissibility into evidence of his wallet claiming it was seized during an illegal search of a co-accused's vehicle.[1] Appellant also contends that had his wallet not been seized, he would not have been linked with the offenses of which he was convicted.

This allegation of error may be better understood after recitation of factual background relevant to it. A series of armed robberies and attempted robberies occurred at Fort Knox, Kentucky, during the late evening hours of 31 July 1976. Special Agent Gallimore of the Army Criminal Investigation Command directed the investigation of these episodes as they were re-

ported. As a result of interviewing victims and witnesses, Mr. Gallimore learned that the alleged assailants were two black males, one of whom was armed with a large caliber revolver. He also ascertained that a 1974 red Ford Torino automobile with raised rear end, distinctively styled wheels, white stripes, hood scoop, and yellow traction bars may have been used by the robbers. Agent Gallimore later learned that a third black male may have been involved and that a forty-five caliber pistol may also have been used. Mr. Gallimore issued several all-points bulletins and, with his assistants, began searching the Fort Knox installation for the suspect vehicle.

After stopping at least one car which answered the description of the suspect automobile but turned out not to be that vehicle, Mr. Gallimore stopped an automobile operated by Private Coleman, a co-accused. Mr. Gallimore, with his weapon drawn and accompanied by five other agents and military policemen ordered Coleman to get out of the car. Upon complying with this order, Coleman was "spread eagled" against his vehicle and patted down for weapons. He was unarmed. According to his testimony at the hearing on appellant's motion for appropriate relief, Mr. Gallimore told Private Coleman that there had been a series of armed robberies committed at Fort Knox that evening by three black males armed with a large caliber revolver and a forty-five caliber automatic [pistol]. Agent Gallimore, after asking Coleman's consent to search his vehicle for the revolver and the automatic pistol informed him that "you don't have to let me search your car if you don't want to." At that time, Private Coleman agreed to the search. He also volunteered that he knew the agent's purpose and had in fact been stopped by the Kentucky State Police and questioned about the robberies. This testimony was corroborated by another agent who was present at the scene. Private Coleman testified that he verbally consent-

---

1. Appellant's standing to litigate this issue was not contested by the Government. *See* paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition) and *United States v. Harris*, 5 M.J. 44 at 46–47 (C.M.A. 1978).

ed to the search but explained that he did so because he believed that Fort Knox post regulations automatically subjected his vehicle to search and that effective withholding of permission was impossible. Further, Coleman claimed that he was intoxicated and was frightened by the six armed men who descended upon him.

During the course of the search of Coleman's automobile, Agent Gallimore saw two wallets located in the glove compartment which was open and without a lid. One of these belonged to the appellant. The other belonged to Private Lewis, another co-accused. Mr. Gallimore asked another agent if any of the victims had reported the loss of their wallets. At that time Private Coleman volunteered that the wallets belonged to his two friends who he had dropped off at the bowling alley a little while before. At this time three individuals approached the agents and stated that they had been robbed only moments ago by two Negro males armed with a large frame revolver. One of the victims stated that he recognized Coleman as one of the robbers. Although Coleman vigorously protested his innocence, Gallimore decided to take him into custody for the purpose of checking his alibi.

■ Our review of the relevant facts of record convinces us that Agent Gallimore's stop of the suspect automobile driven by Private Coleman and his subsequent detention and search of Coleman was at least based upon a reasonable suspicion that Coleman had committed or was about to commit a crime and that he may have been armed and dangerous. *See Terry v. Ohio*, 392 U.S. 1 at 20–23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also United States v. Summers*, 13 U.S.C.M.A. 573, 33 C.M.R. 105 (1963). In order to support this determination, we must be able to find "specific and articulable" facts which taken together with rational inferences from those facts, reasonably pointed to Coleman's involvement in the criminal activities in question. *Terry v. Ohio, supra*, 392 U.S. at 21 and 27, 88 S.Ct. 1868.

Agent Gallimore was warranted in basing his suspicions on the fact that there had been several armed robberies recently committed on Fort Knox within a reasonably short time reportedly by Negro males armed with handguns and driving a specifically described and somewhat uniquely decorated automobile. His knowledge that some victims had been assaulted as well as robbed warranted his suspicion that Coleman might be armed and dangerous and the actions he took pursuant to that suspicion. Consequently, Agent Gallimore's stop and detention of Private Coleman which led to the search in question was proper.

■ In view of Mr. Gallimore's advice to Private Coleman that he did not have to consent to a search of his automobile[2] and Private Coleman's coherent repetition of his alibi and informing Agent Gallimore that he would find only a whiskey bottle and his unequivocal response to questioning by the trial judge that he did voluntarily consent, we conclude that the search of Private Coleman's vehicle was uncoerced and voluntary rather than mere acquiescence or submission to authority on his part.

■ Having thus ascertained that Agent Gallimore was rightfully inside Private Coleman's vehicle when he observed the wallets in the open pocket on the instrument panel, we reject appellant's contention that his wallet was seized during an illegal search. Although the consent to search granted Mr. Gallimore was directed toward weapons, he had a right to be where he was and simply and unexpectedly observed the wallets in plain view. He was not required to close his eyes to the fruits of crime or what he had good reason to believe to be fruits of crime lying freely exposed in the automobile. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Ellison v. United States*, 93 U.S. App.D.C. 1, 206 F.2d 476 (1953); *United States v. Burnside*, 15 U.S.C.M.A. 326, 35

2. "The giving of such preliminary advice may be strong evidence that the individual's assent to the search was voluntary . . . ." *United*

*States v. Noreen*, 23 U.S.C.M.A. 212, 214, 49 C.M.R. 1, 3 (1974).

C.M.R. 298 (1965); *United States v. Kazmi-erzak*, 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967).

## II

■ After seizing appellant's wallet and that of Private Lewis from Private Coleman's automobile, Mr. Gallimore and his agents went to Private Morrison's barracks room where they apprehended him and Private Lewis. Various items of evidence introduced by the Government at trial were seized, including currency which was either in plain view or voluntarily surrendered by the appellant; clothes of the suspects which they put on after being apprehended; and a replica of a .357 magnum revolver which was discovered pursuant to the agents' entry and search of appellant's room. This search was authorized by the acting company commander, a second lieutenant. Appellant and Lewis were subsequently taken to the military police station where they were placed, handcuffed, on a bench where they may have been observed by several if not all of the government's witnesses. Appellant and his co-accused were at this time wearing the shirts and trousers which were later introduced into evidence as clothes worn by the robbers. Although there is some conflict in the relevant testimony, the government witnesses either were not instructed to avoid talking among themselves as to the identity of the alleged robbers and to avoid the area where the suspects were seated or did not understand any instructions of this nature they may have received.

Mr. Gallimore also conducted a photographic lineup consisting of photographs of eight individuals, three of whom were appellant, Lewis and Coleman. While the backgrounds of the photographs of the three suspects were dark, those of the photographs of the other individuals were light. The government witnesses were also later shown the clothing of appellant and of his co-accused allegedly worn the night in question and full length color photographs of each accused in handcuffs wearing the clothing previously viewed by these witnesses. These color photographs were reviewed by the victims and other government witnesses to the robberies about one week prior to the commencement of appellant's trial.

The foregoing facts provide the basis for appellant's second allegation of error. Appellant asserts that the in-court identification of appellant by Privates Wright and Marin-Gonzalez, who were robbed, by Privates Phelps and Swain, who were witnesses to the robberies of Wright, and by Private Burrell, who placed appellant at the scene of one of the robberies, were based on circumstances surrounding other pretrial identifications which were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

In considering the admissibility of in-court identifications after allegedly inherently suggestive pretrial identification procedures were utilized, the United States Supreme Court in *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), concluded that:

> "[R]eliability is the linchpin in determining the admission of identification testimony . . . . The factors to be considered are set out in *[Neil v.] Biggers*, 409 U.S. [188] at 199–200, 93 S.Ct. 375, [34 L.Ed.2d 401]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." [3]

As a result of our application of the *Biggers, supra*, standards to the facts of record we agree with the opinion and ruling of the trial judge on appellant's motion for appropriate relief in the form of suppression of the in-court identifications of appellant. The trial judge found:

3. *See also United States v. Quick*, 3 M.J. 70 (C.M.A.1977).

". . . that all these witnesses had sufficient opportunity to observe the accused that they identified and that their in-court identifications were based thereon. Phelps and Swain had a chance to observe Morrison in the light at the phone booth. Also they amply observed the automobile he was driving. Wright and Gonzalez observed Morrison over a pistol which he was pointing at them. Such observation was ample with unlimited retentive attention. All were positively certain about their in-court identification, and the length of time between the crime and the pretrial identification was not unreasonable. The viewing of the accused (appellant) at the bench in front of the MP desk was accidental and had deminimus effect on the in-court identification. The viewing of the accused on the bench in front of the desk sergeant, the clothing display, and the photographic line up were not impermissibly suggestive. The picture display by the trial counsel had no effect upon the in-court identification, which was based solely upon their confrontation or meeting of the accused [appellant] at the phone booth with respect to Wright, Phelps and Swain and while being robbed with respect to Wright and Gonzalez, and when Gonzalez was with the accused in the STC barracks. . . .

It is also the opinion and ruling of this Court that the witness Burrell had sufficient opportunity to observe the accused [appellant] and this was what his in-court identification was based upon . . . . There was no impermissible suggestive pretrial identification."

The remaining assignments of error have been considered and are deemed to be without merit.

Accordingly, the findings of guilty and the sentence are *AFFIRMED.*

Senior Judge CLAUSE concurs.

Judge FELDER concurs in the result.