Jones *v.* State.

4512                                   213 S. W. 2d 974

Opinion delivered October 4, 1948.

Rehearing denied November 1, 1948.

*Bob Bailey, Jr., Reuben Chenowith* and *Bob Bailey,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

Smith, J. Appellant was convicted and given a life sentence in the penitentiary upon the charge that he had murdered Nancy Chansley, who was his mother-in-law, and from that judgment is this appeal.

He filed a motion to quash the jury panel, which motion was overruled, and while that action is assigned as error, the assignment is not argued in the brief. This motion may be disposed of, however, as was a similar motion in the recent case of *Washington* v. *State, ante,* p. 218, 210 S. W. 2d 307. It may be said here as was said there: "Appellant is in no position to complain of the selection of any juror, because appellant was not required to take any juror he did not desire. Every juror accepted on the trial jury in the case was accepted by appellant" as he did not exhaust his challenges.

Appellant has been married three times, and all of his marriages proved infelicitous. His last marriage was to the daughter of the woman he was charged with having murdered. He lived in that home with his wife and her mother, who had married one Sherman Barker, and with Mrs. Barker's (*nee* Chansley's) two sons. It appears that a large part of appellant's earnings were devoted to the support of the family thus constituted.

An illicit relation arose and existed between appellant's wife and Clyde Adams, of which all the family were aware. Appellant was employed as a railroad section hand and had taken out a group insurance policy for $1,000, payable to his wife. He conceived the idea that a conspiracy existed to kill him in order that the insurance might be collected, and for Adams to marry his widow. Upon this question appellant asked an instruction reading as follows:

"You are instructed if you find from the testimony that the deceased, Nancy Chansley, Clyde Adams and Columbus Chansley, together with Ruby Jones conspired to bring about the separation of the defendant and Ruby Jones and the marriage of Ruby Jones and Clyde Adams and the death of the defendant, Robert Jones, if necessary in order to collect his insurance and that in doing

this Clyde Adams, Columbus Chansley and Nancy Chansley were killed then you should find the defendant not guilty.''

This instruction was properly refused for two reasons. First, no such conspiracy was shown, and second, it would have been no defense if true.

Appellant not only killed his mother-in-law, but he also killed Columbus Chansley, his brother-in-law, and Clyde Adams, his wife's paramour. All three were shot with a thirty-eight caliber Colt pistol, which appellant testified he had bought from Sherman Barker, his wife's stepfather. Barker identified the pistol which appellant admittedly had employed and testified that he had ''missed it'' from his home.

After appellant had been arrested he signed a written confession which contained among others the following recital, ''I made up my mind this morning when I got out of bed about four a. m., that I was going to get shed of them, that is Clyde Adams, Columbus Chansley, Nancy Chansley, and my wife, Ruby.''

Before admitting this confession in evidence, the court properly had a preliminary hearing in chambers as to whether the confession had been freely and voluntarily made. The testimony which is incorporated in the record was amply sufficient to warrant the admission of the confession in evidence, but the instructions directed the jury to determine whether the confession had been voluntarily made, and to disregard it unless it was found to have been voluntary.

There were five cartridges in the pistol which appellant used. With these he shot Clyde Adams twice, and Columbus Chansley twice. He shot Mrs. Chansley with the remaining cartridge after which he beat her over the head with the pistol. His counsel summarizes his testimony in the following language which we copy literally:

''The sum and substance of his statements were: He went to the home of Nancy Chansley, his estranged wife's mother, about ten o'clock, October 31, 1947. He

went there at the urgent request of his wife, Ruby Jones, who had agreed to go to the show with him. But to his surprise Ruby was mad and spoke abusive words to him; that she and her mother had a secret conference; that he started to catch a way back to his work, but that he went down into a pasture where he was attacked by Clyde Adams and Columbus Chansley. He shot them from the front and started home. Nancy Chansley attacked him with a large knife. He shot her, but due to the slight wound she was not stopped and he had to hit her with the revolver, then she dropped the knife and they made friends, so to speak. She was not seriously hurt and walked with him out of the pasture and about halfway to the main road. They sat down and talked their troubles over. He says that they agreed that the wounded woman should tell that a car hit her and that when she should come to his home they would marry or live together.''

The court of its own motion ordered appellant sent to the State Hospital for Nervous Diseases for examination as to his sanity, and the superintendent of that institution, with another physician also employed there, testified that appellant was sane, although his mentality was that of an eleven-year-old child. A young lady who is an instructor in psychology in one of the state schools testified that she examined appellant and that the tests she gave him showed the mentality of a child only six and a half years old, and certain other testimony was to the effect that appellant's mentality was that of a child not over ten years old. Upon this, and other testimony, two defenses were interposed, first that appellant was not guilty because of lack of mentality, and second, that he killed Mrs. Chansley in his necessary self-defense.

Before the trial, a motion was filed that the State be required to furnish appellant's counsel a copy of appellant's confession which was offered in evidence, but the request was denied. We see no reason why this request was not granted, in fact we think it should have been, but we cannot say that this was such prejudicial error as calls for the reversal of the judgment. Copying the con-

fession would have furnished no evidence that it was not freely and voluntarily made.

Photographs of the dead bodies of Clyde Adams and Columbus Chansley were taken a few hours after they were killed, and these photographs were offered in evidence over appellant's objection, it being insisted that their gruesomeness tended to prejudice the jury against appellant, and proved no fact which was denied. There had been no mutilation of the bodies, and the testimony on the part of the state was to the effect that the bodies had not been moved and that both men were lying where they had fallen. In overruling the objection to the admission of the photographs, the court said:

"In view of the defense interposed here, that of self-defense, and for the further fact that Mr. Hickman (the sheriff) says he was present when the pictures were taken and that the bodies were in the same position as they were when he first saw them and shown to him by the defendant, Jones, the Court holds them admissible. The Court doesn't feel that there is anything present in the pictures themselves which would have a tendency to inflame or create any bias in the minds of the jury."

After appellant had been placed under arrest he conducted the sheriff to the scene of the killing, and in regard to this evidence, the court instructed the jury as follows:

"You are instructed that with reference to this evidence, it is to be considered by you only as tending to shed light, if it does shed light, on the intent or motive with which the alleged assault was made on Mrs. Nancy Chansley, and for no other purpose. The defendant, Robert Jones, is being tried at this time only for the alleged killing of Mrs. Nancy Chansley and not for the alleged killing of Columbus Chansley or Clyde Adams, and the testimony introduced should be considered only by the jury in determining the guilt or innocence of the defendant on the charge for which he is now being tried and for no other purpose."

After killing Mrs. Chansley, her son Columbus, and Adams, appellant returned to the Barker home, where

he told Barker that he had killed the boys and that he had shot Mrs. Chansley. He said the boys "ganged" him and had him down on the ground when he shot them.

Appellant testified that he could neither read nor write, although he got up to the third grade in school, and his testimony shows him to be a man of little intelligence, although he answered rationally the many questions asked him on his direct and cross-examination, and he undertook to tell a story which if believed, would have supported a plea of self-defense. He began working as a section hand at a wage of $3 per day which was later raised to $4 per day. He told a story of his wife's infidelity, and of his relations with her family calculated to embitter him, but he denied having any intention of killing his wife or anyone else. When he came to the immediate circumstances of the killing, his story was that he met the boys and proposed to pay one of them some money he owed, and the boys said they did not want his money, but did want his hide, and that he retreated as they advanced until he fell in a ditch. The men continued to advance with drawn knives, and that he first shot Columbus, who was nearest him, and he then shot Clyde who continued to advance with his knife in hand. The pictures tend to refute this story as the bodies were found on opposite sides of the road about twenty or thirty feet apart.

Appellant further testified that after shooting the boys, Mrs. Chansley appeared on the scene and said: "If the boys can't kill you I will," and she advanced on him with a long dirk knife; that she struck at him with the knife and cut the sleeve of his shirt and that he could not run away as she was too close to him, and as she kept coming on him he shot her.

The photographs were admissible in evidence for either of two reasons: First, they tended to refute appellant's statement that the boys "ganged" him, as the bodies of the boys were found on opposite sides of the road; and second, they tended to show that appellant was carrying out the plan, which according to his confession, he had formed at four o'clock that morning, that is, to

kill the three persons he did kill, and the fourth person he did not kill.

In the case of *Johnson* v. *State,* 156 Ark. 459, 246 S. W. 516, the defendant was on trial for killing one R. B. Wood. At the same time he had killed another man, named Elston Wood. The State was permitted, over defendant's objection, to show the location and range of the wound inflicted upon Elston Wood. In holding that this was not error, Justice HART there said: "While the defendant was being tried for the killing of R. B. Wood, yet Elston Wood was first killed by him. Both killings occurred at the same time and place and were necessarily parts of the same transaction. The two shots were fired in quick succession, and the testimony was competent as tending to show motive on the part of the defendant." So here. The photographs tend to refute appellant's testimony as to his position when he fired the fatal shots and tend to show his motive and design in killing the men.

Appellant asked an instruction which was properly refused reading as follows: "You are instructed if you find from the testimony that the defendant has the mind of a child under twelve years of age you should find the defendant not guilty."

In the case of *Chriswell* v. *State,* 171 Ark. 255, 283 S. W. 981, a headnote reads as follows: "Proof that an adult defendant had the intelligence of a child from seven to nine years old is insufficient to show that he was insane and therefore incapable of committing a crime."

The defense of insanity was not interposed, it being insisted only that appellant was mentally undeveloped. Upon this question Justice BUTLER said in the case of *Daniels* v. *State,* 186 Ark. 255, 53 S. W. 2d 231: "All courts agree that mere mental weakness does not exempt from responsibility, nor can one with a mind below normal be exempted from punishment, any more than a person with normal mind." See, also, *Bell* v. *State,* 120 Ark. 530, 180 S. W. 186; *Mitchell* v. *State,* 206 Ark. 149, 174 S. W. 2d 241.

Appellant insists that the alleged confession was improperly admitted for the reason that it was made

while he was under arrest without a warrant and without being carried before a committing officer, but we have held that these are only circumstances to be taken into account in determining whether the confession had been voluntarily made. See *Thomas* v. *State,* 210 Ark. 398, 196 S. W. 2d 486.

The testimony shows that Mrs. Chansley's skull was fractured and that she died the day after she was shot and assaulted, and as a result thereof, and the testimony supports the finding that she was shot and beaten as a part of the plan which the confession detailed.

Certain other errors have been assigned and argued, but we do not regard them as of sufficient importance to require discussion and decision.

As no error appears the judgment must be affirmed and it is so ordered.

Robins, J., dissenting. I respectfully dissent from the majority opinion.

In this case appellant was tried and convicted on information charging him with the murder of Nancy Chansley. He admitted the homicide, and his defense was that he did the killing in self-defense, and also that he was not of sufficient mental capacity to be amenable to the law for his act.

On the same day on which Mrs. Chansley was killed, but at a different time and place, appellant had killed Columbus Chansley and Clyde Adams. The lower court permitted the state to introduce in evidence photographs of the dead bodies of Columbus Chansley and Cldye Adams as they lay upon the ground in the field where they were killed. Appellant admitted killing these two men and no issue was made upon that question.

I can conceive no theory upon which the photographs of the dead bodies of appellant's two other victims were admissible. They could certainly shed no light upon the issues to be decided by the jury, which were, whether appellant killed Nancy Chansley in self-defense and whether he was sane when he did so. No evidence ought

to be received in any case, civil or criminal, unless such evidence is material and relevant to the issues in such case. If the fact of the killing by appellant of the two men done at a place almost a quarter of a mile from where Mrs. Chansley was slain, and at a different time, was material in the case at bar, this was abundantly shown by appellant's confession, in which he admitted killing the two men. The introduction of the photographs was not necessary or informative for that purpose. The inevitable effect of these photographs was to inflame and prejudice the minds of the jury against appellant, and, since they were not relevant to the issues joined, I think that the learned circuit judge erred in permitting them to be introduced. ''Photographs that are calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions.'' 20 Am. Jur. 609.

I am authorized to state that Mr. Justice HOLT and Mr Justice McFADDIN join in this dissent.