GERARD *v.* STATE.

5088 372 S. W. 2d 635

Opinion delivered November 26, 1963.

*Sam Montgomery,* for appellant.

*Bruce Bennett,* Attorney General, by *Richard B. Adkisson,* Asst. Attorney General, for appellee.

FRANK HOLT, Associate Justice. The appellant was charged with the offense of permitting gambling. The trial court, sitting as a jury, found the defendant guilty and fixed his punishment at a fine of one hundred dollars and costs and thirty days imprisonment, from which judgment comes this appeal.

For reversal appellant adamantly urges only the point that:

"The trial Court erred in not sustaining the motion of the defendant to quash and strike the testimony that

was given by police officers who went upon the private property of the AMVET POST NO. 60, and made an arrest without a search warrant in violation of the Fourth Amendment to the Constitution of the United States of America,[1] and in violation of Article 2, Section 15 of the Constitution of the State of Arkansas."[2]

We proceed to review the evidence in this case. Based upon "several reports that there was gambling going on down there" at this club two officers, dressed in plain clothes and in accordance with a pre-arranged understanding with their superiors of the North Little Rock Police Department, appeared at the club room door about midnight of March 16, 1962 and sought admission. They had no search warrant. Upon the doorkeeper's inquiry if they were members, one of the officers represented that he knew the drummer in the band. The officers were admitted upon the payment of one dollar with the remark: "Go on in and have a good time." They ordered mixed drinks and after a few minutes one of the officers inquired of the barmaid where his fellow officer had gone. She directed him to another room in the club where he saw his fellow officer and two other men playing cards with money and chips being used in the game. Based upon this observation five individuals, including the appellant, were placed under arrest and charged with violating the gambling laws. The officers seized as evidence the cards, chips and money which were made exhibits to their testimony at the trial of the case.

There were approximately fifty to sixty persons on the premises of the club, including several teenagers, where the officers observed the serving of mixed drinks and the gambling activity. Edward Boerner, Jr., aged

---

[1] "[Unreasonable searches and seizures.]—The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] "§15. Unreasonable searches and seizures.—The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

nineteen (19), testified that on this occasion he sought and gained admittance without being a member. The officers did not identify themselves until they made the arrests and seized the evidence of gambling. When queried as to why they did not secure a search warrant, one of the officers testified that from their information they considered it unnecessary in order to gain admittance.

The record reflects that only two individuals, appellant and one other, appeared to be members of this club. There is no other evidence that those present were admitted under rights of membership. According to the officers the appellant said that "he was the operator and he had quite a bit of money involved in it and was going to get his money out of it." Also, it "was the only way he had to make a living." Based upon this evidence the appellant seeks to invoke the aid of our Federal and State Constitutions on the premise that this action of the police officers was an invasion of his privacy and, therefore, an unreasonable search and seizure.

We do not agree with appellant. We do not think that his constitutional rights as guaranteed by our Federal and State Constitutions were violated. From the evidence in this case it appears to us that the premises were not of a private nature. On the contrary, they were of such a nature that the general public, including teenagers, was indiscriminately admitted. The Constitutional guarantee against unreasonable search and seizure does not apply to entry into a public place. The right of these officers to be present on these premises and to perform their duty is succinctly expressed and approved by us in *Albright* v. *Muncrief*, 206 Ark. 319, 176 S. W. 2d 426, where we said:

"This court, in *Van Hook* v. *Helena*, 170 Ark. 1083, 282 S. W. 673, after quoting with approval from *Boyd* v. *United States*, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, said: 'The protection of the search and seizure clause of the Constitution does not extend to the entry of an officer into a public place to make an arrest upon probable cause that an unlawful act is being committed

there. The protection applies, not to all premises or property, but only to dwelling houses or other such private places.' "

Also, in the instant case no search was required and, therefore, the provisions of our Federal and State Constitutions are not applicable. The evidence secured by the police officers was open to the eye and hand. It was unnecessary to conduct a search. 47 Am. Jur., Search and Seizure, § 20, p. 516; 79 C.J.S., Searches and Seizures, § 9, p. 788 and § 69, p. 850; 89 A. L. R. 2d p. 773; *Ellison* v. *United States,* 206 F. 2d 476 (1953). There was no exploratory search by the officers seeking to uncover and find any papers and effects of the appellant which were hidden or concealed from their view. Officers of the law are not required to close their eyes and ignore such illegal activities after they are lawfully on the premises. *McDonald* v. *United States,* 166 F. 2d 957 (1947); *Bonn* v. *State,* (Alas. 1963) 372 P. 2d 785.

The appellant relies for reversal upon the recent decision of *Mapp* v. *Ohio,* 367 U. S. 643 (1961). In that case the appellant's house was involved instead of a public place; the officers forcibly gained entrance against Miss Mapp's protest; the officers conducted an exploratory search of her residence in an effort to discover if a suspect was hiding there. In searching her residence they incidentally found secreted there pornographic material. The Supreme Court of the United States reversed her conviction of possession of such holding that the search and seizure by the local officers was unreasonable and, thus, in violation of her constitutional rights. We recognize the force and effect of the *Mapp* case, however, the fact situation in the instant case does not call for its application. Therefore, there is not presented to us the "proper question" to re-examine our former decisions as announced by our caveat in *Clubb* v. *State,* 230 Ark. 688, 326 S. W. 2d 816, and reiterated in *Stewart* v. *State,* 233 Ark. 230, 343 S. W. 2d 568 and *Burke* v. *State,* 235 Ark. 882, 362 S. W. 2d 695.

As was said in *Carroll* v. *United States,* 267 U. S. 132, our Federal Constitution "does not denounce all searches

or seizures, but only such as are unreasonable. * * * The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in the manner which will conserve public interests as well as the interests and rights of individual citizens." See also 47 Am. Jur., Search and Seizure, § 52, p. 532; *Van Hook* v. *Helena, supra; State* v. *Blood,* (Kan. 1963) 378 P. 2d 548; *Commonwealth* v. *Tanchyn,* (Penn. 1963) 188 A. 2d 824.

When we view the Fourth Amendment of our Federal Constitution and Article 2, § 15 of our State Constitution [which is essentially in the same language] in this light we are of the opinion there was no invasion of appellant's privacy in the case at bar.

Affirmed.

McFADDIN, J., concurs.

ED. F. McFADDIN, Associate Justice (concurring). I agree with all that is stated in the Majority Opinion; and the purpose of this concurrence is to add another reason why I think this case should be affirmed, even in the face of the strong insistence of appellant that the club was a "private place."

The evidence shows that the entry into the club was obtained by permission. The officers told the man at the door that they knew the drummer in the band (which the evidence shows that they did), and then the officers paid the man at the door a dollar as admission fee and he told them: "Go in and have a good time." So the officers gained entrance by permission, without misrepresentation; therefore, they were not trespassers.

In 79 C.J.S. page 831, "Searches and Seizures" § 66, cases from various jurisdictions are cited to sustain this text:

"The constitutional provisions against unreasonable searches and seizures do not prohibit a search without a search warrant that does not constitute a trespass. Hence, the obtaining of information by the eye, where it is not aided by a trespass, does not constitute an unlawful search, since no search is involved, and the use

of a flashlight or searchlight in aid of vision does not render it illegal. The constitutional guaranty does not prohibit a seizure, without a search warrant, where the articles sought are disclosed to any one of the senses; . . ."

Therefore, even if the club had been a private club, my point is that the officers gained entrance by permission and were not trespassers and the constitutional provisions, against unreasonable search and seizure, afford the appellant no shield in this case.