Williams *et al v.* State

5074                                   375 S. W. 2d 375

Opinion delivered January 27, 1964.

[Rehearing denied March 9, 1964.]

*Guy H. Jones* and *Francis T. Donovan,* for appellant.

*Bruce Bennett,* Attorney General, By *Jerry L. Patterson,* Asst. Atty. General, for appellee.

Ed. F. McFaddin, Associate Justice. The appellants are George Williams, Henry Turney, Jess Holeman, and Marvin Stripling. They were jointly charged, tried, and convicted of the crimes of burglary and grand larceny

(Ark. Stat. Ann. § 41-1001 and § 41-3907 [1947]); and they prosecute this appeal. Henry Turney filed a separate motion for new trial containing eleven assignments, and the other three appellants filed a joint motion for new trial containing fourteen assignments. In addition, Williams filed a separate pleading entitled, "Motion to Set Aside the Verdict as to George Frank Williams," and this pleading contained two assignments. The appellants have grouped all their assignments in eighteen points which are presented in their joint brief; and we will group the various points in suitable topic headings.

The information charged—and the State's evidence was designed to establish—that on the 18th of February, 1962, the four named appellants committed the crimes of burglary and grand larceny by feloniously, etc. breaking and entering the building of Roy Nelson, Jr. in Lonoke County, Arkansas, and taking away hot water tanks, tools, plumbing equipment, a rifle, a chain saw, and various other items in excess of the value of $35.00. The appellants were arrested in Faulkner County on February 19, 1962; and the articles mentioned in the information were found and returned to the owner, Roy Nelson, Jr. The legality of alleged confessions and the way the officers obtained the property constitute some of the issues on this appeal, as well as other rulings in the course of the trial.

I. *Alleged Error In Admitting Testimony Relating To Matters Which Occurred Four Days Before The Crimes Were Alleged To Have Been Committed.* State Police Officer Bill Brashers testified that on February 14, 1962, he arrested Marvin Stripling in Lonoke County for driving a car without a driver's license; that Stripling was driving a *white Ford pick-up truck;* and that Stripling said the truck belonged to Henry Turney, who lived in Faulkner County, Arkansas. Brashers testified that he checked out the license number and found that the truck was registered in Turney's name. Lonoke City Officer Bobby Joe Davis testified that Brashers brought Stripling to the Lonoke City Hall; that Stripling called Turney in Conway, who came to Lonoke and posted bond

for Stripling; and that Stripling and Turney left in the said white Ford pick-up truck.

Objections were made to all of this testimony because it related to events four days before the crimes here charged; but this testimony was admissible as links designed to connect Turney and Stripling with the crimes here charged, since it was testified that the *said white Ford pick-up truck* was the same one that was used to haul away the articles from Nelson's house on February 18th and some of the stolen property was found in the same truck, as will subsequently be mentioned. The evidence was that Turney and Stripling were together in the car that was subsequently used to carry away the stolen articles; and this evidence was for the purposes of showing identification and complicity in the crimes here charged. The evidence detailed circumstances tending to connect the owner and driver of the truck with the crimes charged; so the appellants' objections on this point are without merit.

II. *The Appellants Claim That The Alleged Confessions By Stripling And Holeman Should Not Have Been Admitted In Evidence.* Roy Nelson testified that on Saturday, February 17th, he was constructing a dwelling seven miles from Lonoke and worked until about 8 P.M.; that when he went back to work on Sunday morning, February 18th, he discovered that someone had stolen all of the material supplies, parts tools, etc., from the house, including hot water heaters, bathroom fixtures, doors, plywood, etc.; that he could see from the vehicle tire tracks on the ground where the vehicle and attached trailer had entered and left the premises; and that he immediately contacted the Sheriff of Lonoke County and gave him a list of the articles stolen of a value in excess of $2,000.00. Sheriff Minton of Lonoke County testified that after observing the tracks and other matters at the Nelson house, he suspected that the said *white Ford pick-up truck* which Stripling had been driving on February 14th was the vehicle that had been used in the commission of the burglary and grand larceny. Minton further testified that he and State Policemen Caldwell and Mullinix

obtained from a Justice of the Peace in Lonoke County "John Doe" warrants for the arrest of the occupants of the said truck; that they went to Conway where the truck was located at the home of appellant Holeman; and that Stripling and Holeman were arrested and taken to Lonoke and incarcerated. The officers testified that Holeman and Stripling confessed their parts in the crimes.

In advance of the jury trial the appellants moved to exclude the confessions of Holeman and Stripling as illegally extorted and as obtained under force and duress. At the said advance hearing Holeman and Stripling testified as to the alleged beatings, etc. administered to them to force the confessions. The Trial Court held that the issue of the voluntariness of the confessions was for the jury; and at the trial the officers just as stoutly denied all such mistreatment of the prisoners and claimed that the confessions were voluntarily given. We cannot say that there was error in the ruling of the Trial Court in submitting to the jury the issue of the voluntariness of the confessions. See *Jones* v. *State,* 213 Ark. 863, 213 S. W. 2d 974; and *Moore* v. *State,* 229 Ark. 335, 315 S. W. 2d 907. The issue of the voluntariness of the confessions was submitted to the jury under instructions not here claimed to be erroneous. The question of whether the arrests were made by the State Police Officer, who could make arrests in Faulkner County, or by Sheriff Minton of Lonoke County, who could not make arrests in Faulkner County, was a fact issue; and no error is claimed as to the instruction on this matter.

III. *Appellants Claim A Violation Of Their Constitutional Rights*[1] *Against Unreasonable Search .and*

---

[1] The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Art. 2, § 15 of the Arkansas Constitution provides:

"The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable

*Seizure.* This point is most vigorously urged; and this is the most difficult question in the case. In advance of the jury trial the appellants presented their motion to suppress all evidence obtained by search and seizure and claimed that there were no valid search warrants. We recognize the holding of the Supreme Court of the United States in *Mapp* v. *Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R. 2d 933. Under that case, evidence illegally obtained is not admissible in the State courts, regardless of the previous holding of the State courts on the point. The question here is whether the the facts in this case bring it within the holding of *Mapp* v. *Ohio.*[2]

The testimony of Officer Caldwell detailed the course of events. The officers first arrested Holeman about 10 P.M. February 18th, and then arrested Stripling about thirty minutes later. When Holeman was arrested the officers started to search his house, but Mrs. Holeman refused them entrance until a search warrant could be shown her. The officers relayed the information back to Conway and claimed that they obtained a search warrant from the Municipal Court in Conway. We are convinced from the evidence that the said search warrant so obtained was entirely void and worthless in every respect. It would serve no useful purpose to detail all of

cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

[2] There are many annotations and law review articles concerning *Mapp* v. *Ohio,* which was decided June 19, 1961. We list only a few: "Federal constitution as affecting admissibility of evidence obtained by illegal search and seizure," in 84 A.L.R. 2d 959; "Constitutional Law, Searches and Seizures," 15 Ark. Law Rev. 445; "Search and Seizure— The Exclusionary Rule and the Question of Standing," in 17 Ark. Law Rev. 176; "Mapp v. Ohio: Pandora's Problems for the Prosecutor," in 111 U. of Pa. Law Rev. 4; "Midnight Welfare Searches and the Social Security Act," in 72 Yale Law Journal 1347. Distinct from the Mapp case there are a number of other pertinent and informative articles, some of which are: "Propriety or lawfulness of seizure, not incident to arrest, of papers, documents, letters, books and records not described in search warrant," in 79 A.L.R. 2d 1005; "Lawfulness of nonconsensual search and seizure without warrant prior to arrest," in 89 A.LR. 2d 715; and "Search and Seizure: a No-Man's Land in the Criminal Law," in 49 Cal. Law Rev. 474. Some of our more recent cases involving search and seizure are: *Clubb* v. *State,* 203 Ark. 688, 326 S. W. 2d 816; *Stewart* v. *State,* 233 Ark. 230, 343 S. W. 2d 568; *Burke* v. *State,* 235 Ark. 882, 362 S. W. 2d 695; and *Gerard* v. *State,* 237 Ark. 287, 372 S. W. 2d 635 (Opinion delivered November 26, 1963).

the evidence that impels us to such conclusion. The fact is that we proceed is this case as though there had been no search warrant of any kind.

As aforesaid, Mrs. Holeman refused to allow a search of the house without a warrant. Armed with the said warrant the officers searched the Holeman house, but they found nothing; so such search, though illegal, obtained no evidence; and thus the search of the Holeman house passes out of the case. If any evidence had been obtained in the Holeman house we would promptly hold that such was illegally obtained.

There was the *white Ford pick-up truck* parked in front of Holeman's house; and in the truck the officers found a hand drill, some tools, and other miscellaneous articles, all of which were later identified by Nelson as having been stolen from him. Were these articles obtained from the truck in violation of the appellants' constitutional rights against unreasonable search and seizure? There was no entry into a house, building, or dwelling, in order to see these articles in the truck parked out in the open. In 79 C.J.S. p 831, "Searches and Seizures" § 66, cases from various jurisdictions are cited to sustain this text: "The constitutional provisions against unreasonable searches and seizures do not prohibit a search without a search warrant that does not constitute a trespass. Hence the obtaining of information by the eye, where it is not aided by a trespass, does not constitute an unlawful search, since no search is involved, and the use of a flashlight or searchlight in aid of vision does not render it illegal. The constitutional guaranty does not prohibit a seizure without a search warrant where the articles sought are disclosed to any one of the senses . . ." Thus the articles in the truck, parked out in the open, were seen by the officers and taken; and the constitutional provisions against unreasonable search and seizure afford the appellants no shield against the articles that were in the truck and so seized.

After the confessions of Stripling and Holeman, as heretofore mentioned, warrants were obtained for the

arrest of Williams and Turney; and in the early morning of February 19th they were arrested. According to the State's evidence, Turney told the officers that the stolen property was stored in a trailer near the settlement of Greenbrier in Faulkner County, several miles from Conway. Turney and Williams accompanied the officers to Greenbrier and pointed out the house trailer, and Turney unlocked the door to the trailer; and nearly all of the stolen property was found in the said house trailer. Turney and Williams assisted the officers in taking the articles out of the trailer and loading them into a truck so the articles could be returned to Nelson, the owner. Were the appellants' constitutional protections against unreasonable search and seizure violated by the officers thus obtaining the articles from the trailer and detailing the evidence concerning same? Here, there was evidence, not only of waiver and consent, but also of active participation in the search; so there is no merit to the contention of the defendants that their rights against unreasonable search and seizure were violated insofar as concerns the articles in the trailer. In 79 C.J.S. p. 816 *et seq.*, "Searches and Seizures" § 62, there is a discussion of waiver and consent; and the holdings from the various jurisdictions—including the United States Supreme Court—are summarized:

"The constitutional immunity from unreasonable searches and seizures may be waived, as by a voluntary invitation or consent to a search or seizure. Thus individuals may waive their immunity to illegal searches of their persons, possessions, or dwelling houses, as well as to the illegal search of their premises, places of business, and searches and seizures of books, papers, or records. Hence, one who has thus consented to a search cannot thereafter complain of irregularities in the search warrant, or question its sufficiency or the manner of its issuance, since an invitation or consent to the search dispenses with the necessity of a search warrant altogether."[3]

---

[3] To the same general effect see 47 Am. Jur. p. 547, "Searches and Seizures" § 71.

The State's evidence further showed that after the articles from the house trailer had been recovered, as above mentioned, the officers asked Turney if there were any more stolen articles; and Turney said there was a hot water tank and sink at the home of his father-in-law a short distance away from the house trailer. The party of Turney, Williams, and the officers, proceeded to that house. Turney and Williams went inside and brought out the hot water tank and sink, which were placed in the truck to be returned to Nelson. The officers asked Turney if any other stolen property was in the house; and Turney turned on the light and told the officers they were welcome to look. They went in and found nothing except the connection to the sink, which was returned to Nelson with the other property.[4]

Were the appellants' constitutional protections against unreasonable search and seizure violated by the entrance into the home of the father-in-law and the obtaining of the hot water tank and sink and connection to the sink? According to the State's evidence, Turney and Williams voluntarily brought the hot water tank and sink from the house before the officers entered the house, so as to these articles there was no entry of the building by the officers. It is only as regards the connection to the sink that the officers entered the house of the father-in-law, who was not shown to have been present or anywhere in the vicinity or in any wise connected with any part of the case. Only the appellants are objecting to the actions of the officers. What we have said in regard to waiver and consent in the search of the trailer applies with equal force to the articles found in the house of Turney's father-in-law; so the defendants' constitutional rights against unreasonable search and seizure were not violated.

IV. *Refusal To Exclude Sheriff Minton From The Court Room.* The motions for new trial contain these two assignments:

---

[4] To complete the narrative it is proper to add that all of the stolen property was returned to Nelson on February 19th and he identified and inventoried it and receipted the officers for it. Nelson also testified as to admissions in the nature of confessions that some of the appellants made to him; but it is unnecessary to detail all such testimony.

"2. A motion to suppress all evidence illegally obtained, and motion to quash information based on said illegally obtained evidence, was filed by the defendants herein. A hearing on said motion was had preceding the trial. The hearing was on an afternoon the trial began the next morning. At the hearing the Rule was asked for, but the Court permitted the Sheriff of Lonoke County to stay in the Court Room and hear all of the defendants testify as to their illegal arrests, and the unlawful and illegal search and seizure of their premises. The Sheriff was also permitted to remain in the Courtroom the next morning, after both the State and the Defense had asked for the Rule. He remained there until the Jury was selected and during the opening statements of the Prosecuting Attorney and defense counsel, and the Court excluded him from the room at that point. This was error and in violation of Arkansas law which requires the exclusion of witnesses, when the rule is asked for.

"4. The trial court erred in refusing to exclude a witness for the State, Sheriff Warren Minton, upon the hearing of the motions to suppress evidence, after the rule was asked by defendants, and then permitting Sheriff Warren Minton to testify in the trial of these cases."

These assignments relate to a ruling at the preliminary hearing on the motion to suppress the evidence, as well as to a ruling made at the time of the jury trial. We find no merit in these assignments. The hearing before the Court on the motion to suppress the evidence was on a day in advance of the jury trial, and, of course, before the jury was selecte.d At the said hearing to suppress the appellants asked for "the rule"; and this occurred:

"THE COURT: I will let you have the rule. What witness do you want to call? The sheriff will have to remain to wait on the court, so what witness do you want to call.

"MR. JONES: We object to any witness remaining in the court room.

"THE COURT: I will permit the sheriff to remain.

"MR. JONES: Note our exceptions to the presence of any witness that will testify.

"THE COURT: All witnesses that are going to testify please stand and raise your right hand and be sworn in. The rule has been asked for so you will have to retire from the court room. Who is your first witness, Mr. Jones?"

Sheriff Minton was not called as a witness by the State or the appellants at the said hearing on the motion to suppress the evidence, so he was not a witness at that hearing, and thus the appellants were not deprived of any of their rights by the fact that the Sheriff waited on the Court at the hearing on the motion to suppress the evidence.

The Court denied the motion to suppress, and the next day the case came for trial. A jury was selected, and the following occurred at the beginning of the trial:

"MR. JONES: Let the record show that the state has asked for the rule and witnesses for the State and the defendants are to retire to the witness rooms and Sheriff Minton will be a material witness in this cause and he is to remain in the court room after the rule has been asked for and let the record now reflect at this time we enter our objections on behalf of the defendants for the witness, Sheriff Minton to remain in the court room.

"THE COURT: Lonoke County has only one sheriff and this court has got to have a sheriff to wait on it, to wait on the Court in the calling of witnesses and to keep order in the Court and your motion will be overruled and you may save your exceptions.

"MR. JONES: Note our exceptions.

"MR. DONOVAN: Note the defendants' exceptions."

Then when Sheriff Minton was called as a witness the defendants objected to the Court allowing him to testify, and the following occurred:

"THE COURT: Let the record show I first overruled the motion because the Court stated that it needed some officer to wait on the court, but before any testimony was taken I changed that ruling and Mr. Minton was excluded from the Court room and he heard no testimony from any of the witnesses and the other testimony that he did hear was before the court in the absence of the jury and the jury did not hear any of that testimony as it was before the Court. I will overrule your motion.

"MR. DONOVAN: Note our exceptions."

The appellants insist that under Act No. 243 of 1955 they had an absolute right to have Sheriff Minton excluded from the trial. Said Act reads:

"AN ACT to Amend Arkansas Statute (1947) § 28-702 Authorizing the Exclusion of Witnesses in Criminal Actions.

"*Be It Enacted by the General Assembly of the State of Arkansas*:

"SECTION 1. If the accused or his attorney requests it, the judge shall exclude from the court room any witness, including but not limited to the officers of the court, officers of the law and experts not at the time under examination, so that they may not hear the testimony of other witnesses."[5]

---

[5] Since we have not heretofore discussed Act No. 243 of 1955, it is proper to point out:

(a) That the Act is carried into Ark. Stats. as § 43-2021 (Supp. 1963).

(b) The Act does not purport to amend Ark. Stat. Ann. § 43-615 (1947) which relates to exclusion of witnesses at preliminary hearings.

(c) The caption of the Act No. 243 purports to apply only to criminal trials.

(d) Even though Ark. Stat. Ann. § 28-702 (Repl. 1962) is a part of the Code of *Civil* Procedure, nevertheless Ark. Stat. Ann. § 43-2004 (1947) provides that the rules of civil procedure apply generally in trial of criminal cases.

(e) Whether the language in *Clubb* v. *State*, 230 Ark. 688, 326 S. W. 2d 816, was a comment on the effect of Act No. 243 of 1955 is not necessary for decision here.

(f) Generally, see 8 Ark. Law Review 506 and 9 Ark. Law Review 402.

It is fairly evident from the statement made by the Trial Judge, as last quoted above, that shortly after the ruling that Sheriff Minton could remain in the court room the attention of the Court was called to the said Act No. 243 of 1955, and the Court then immediately excluded Sheriff Minton from the court room so that the Sheriff heard none of the testimony. We therefore see that the Sheriff was excluded and heard none of the testimony, and so no error was committed prejudicial to the appellants.

V. *Other Rulings Claimed As Error.* The appellants assigned as error a number of other rulings of the Trial Court, such as: alleged prejudicial remarks of the Prosecuting Attorney in the argument; refusal to exclude testimony of the witness Bryant; allowing certain officials to testify; remarks of the Trial Judge; and other rulings. To list and discuss all of these assignments would unduly extend this Opinion and serve no useful purpose. It is sufficient to say that we have examined each and all of the assignments and find no reversible error shown in the record.

Affirmed.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice (dissenting). I do not agree with the majority opinion. In my view the majority has, this day effectively emasculated Act 243 of 1955 [Ark. Stat. Ann. § 43-2021 (Supp. 1963)].

From the time of the adoption of the Civil Code until the year 1955, the applicable law on invoking the "Rule" to exclude witnesses from the court room in criminal cases was found in § 658 of the Civil Code [Ark. Stat. Ann. § 28-702 (Repl. 1962)], which reads as follows:

"If either party requires it, the judge *may* exclude from the courtroom any witness of the adverse party, not at the time under examination, so that he may not hear the testimony of the other witness." [Emphasis ours.]

Under § 658 of the Civil Code, this court held on numerous occasions that the matter of putting any witness under the "Rule" addressed itself to the sound discretion of the trial court. These decisions were sound, in that the statute in question employed the word "may". and certainly the employment of "may" clearly left the matter to the sound discretion of the trial judge. Under the cited section of the Civil Code, this court also held that it was not an abuse of discretion to refuse to place officers of the law under the "Rule". Again, because of the peculiar terminology of the statute in question, those decisions were sound.

However, in 1955, with the enactment of Act 243, the Legislature radically changed the law with reference to the exclusion of witnesses under the "Rule" in criminal cases. Section 1 of that Act reads as follows:

"If the accused or his attorney requests it, the judge *shall* exclude from the court room any witness, including *but not limited to the officers of the court, officers of the law* and experts not at the time under examination, so that they may not hear the testimony of other witnesses. [Emphasis ours.]

By the use of the word "shall" in the quoted statute, the Legislature unmistakably declared that the matter of whether witnesses would or would not be excluded from the court room no longer was left to the discretion of the trial court, but that upon demand of the defendant or his counsel, such exclusion became mandatory.

At the beginning of the trial of this case, the appellant sought to suppress certain evidence on the grounds (a) that some of the evidence was obtained by illegal search and seizure, and (b) that certain confessions had been obtained in violation of the defendants' constitutional rights. A lengthy hearing was held on this motion, and at the beginning of this hearing the appellants unequivocally demanded that Sheriff Minton be excluded from the hearing. They duly saved their exceptions to the court's refusal to honor their demand. In the course of that hearing there was testimony from

a number of witnesses, including the testimony of some of the appellants. Their testimony was concerned with the circumstances under which certain searches were conducted and seizures made, as well as the circumstances under which certain alleged confessions were obtained. While the State called no witnesses in this hearing, a large part of the State's case in chief, as well as that of the defendants, was concerned with whether any evidence had been obtained as the result of illegal searches and seizures, or any confession obtained by compulsion. Thus, the sheriff, who was to be a principal State witness, was enabled to learn in great detail the contentions of the defendants with reference to those two vital issues.

The basic error in refusing to exclude Sheriff Minton and allowing him to hear the testimony in question is because it was in direct violation of Act 243 of 1955. This Act was undoubtedly passed to prevent perjury and, more importantly, the opportunity to commit perjury. The policy of the law is to remove the opportunity for perjury and thereby to completely eliminate any question as to whether any witness altered his testimony to meet that of any other witness. There is no satisfactory way to determine what any particular individual may do when armed with knowledge of what other witnesses say. The primary purpose of the ''Rule'' is to prevent collusive testimony and to elicit the truth from each witness by preventing his being influenced by the testimony of others.

It is not the province of this court or of the trial court to determine questions of policy upon which the Legislature has spoken in such unmistakable terms when there is a valid ground for the exercise of legislative power. This court has not attempted to say that the statute in question is unconstitutional. Obviously, such is not the case. It is impossible to say whether the trial court's action in allowing the officer of the law to hear the testimony did the appellants any actual damage. However, a substantial right of the appellants was violated. It will not do to speculate as to whether they were

or were not prejudiced thereby. If it be said that the sheriff in this case was an honorable man who would not stoop to perjury, my reply is that given by this court on several previous occasions: The answer is, "twill be recorded for a precedent and many an error by the same example will rush into the state. It cannot be."

The efficacy of the "Rule" as an instrumentality designed to ferret out truth was first demonstrated in the Apocryphal Scriptures in the story of Susanna and the Elders, where Daniel was impelled by the Lord to separate the lustful elders as they testified in pursuit of their iniquitous desire to besmirch the honor and take the life of a virtuous woman. The result was the complete exoneration of Susanna. From that day until this, the "Rule" has been one of the brightest stars in the crown of justice. I could never vote for its abrogation. For the reason stated, I respectfully dissent.