Raymond Lee BROWN and Carlos A. Satterfield, Petitioners,

v.

Dan D. STEPHENS, Superintendent of the Arkansas State Penitentiary, Respondent.

No. PB-65-C-24.

United States District Court
E. D. Arkansas,
Pine Bluff Division.

Nov. 8, 1965.

Robert M. McHenry, Jr., Little Rock, Ark., for petitioners.

Joe D. Bell, Asst. Atty. Gen., Little Rock, Ark., for respondent.

HENLEY, Chief Judge.

By this habeas corpus proceeding, prosecuted in forma pauperis, petitioners, Raymond Lee Brown and Carlos A. Satterfield, seek release from the Arkansas State Penitentiary. In 1964 following a jury trial at which petitioners were represented by court appointed counsel both petitioners were found guilty by a jury in the Circuit Court of Pulaski County, Arkansas, of the crime of possession of burglary tools. Ark.Stats., Ann., § 41–1006. Each petitioner was sentenced to imprisonment in the penitentiary for a term of five years; both petitioners now contend that in the course of the investigation of their conduct by members of the Little Rock, Arkansas, Police Department and in the course of the subsequent criminal proceedings against them they were denied procedural due process of law in violation of the 14th Amendment to the Constitution of the United States, and that the Circuit Court judgment is void.

Petitioners contend that on May 13, 1964, they were illegally arrested and searched by members of the Little Rock Police Department; that a station wagon, the property of petitioner Brown, was illegally searched without a warrant and that evidentiary material in the vehicle was unlawfully seized; that the materials taken from them personally and the materials taken from the station wagon were improperly admitted in evidence in the Circuit Court, and that the admission of that evidence amounted to a denial of due process. Petitioners contend further that the Circuit Court did not provide them with counsel to prosecute on their behalf an appeal from their conviction to the Supreme Court of Arkansas, and that the failure of that Court to do so was also a denial of due process.

Respondent contends that petitioners' claims are without merit, and, further, that in any event the action should not be entertained by this Court.

The matter has been heard upon the pleadings, requests for admissions propounded by petitioners and responses thereto, a motion to dismiss filed by respondent, oral testimony, and post-hearing briefs.[1]

The record discloses that the homes of both petitioners are in Fort Worth, Texas. On the afternoon of May 12, 1964, petitioners and others came to Little Rock from Fort Worth and registered at the Howard Johnson Motel. On May 13 petitioners left the motel and drove to downtown Little Rock in a station wagon owned and operated by Brown. Petitioners appear to have spent most of the morning and part of the afternoon in a

1. When the petition was filed, the Court appointed Robert M. McHenry, Jr. of Little Rock to represent petitioners without charge; he did so most capably, and the Court is indebted to him for his service.

cafe playing pin ball machines and otherwise occupying themselves.

Both petitioners had criminal records, and each petitioner on the date last mentioned had a hack saw blade secreted in one of his shoes. During the afternoon of May 13 petitioners decided that they would purchase a "crystal converter" or a "harmonic crystal," which when installed in a transistor radio would enable petitioners to intercept police radio calls.

After two efforts made in North Little Rock to purchase the desired device were not successful, petitioners proceeded to an electrical appliance store in Little Rock to make a third effort. Brown parked the station wagon on the street and locked it. He and Satterfield then entered the store, the address of which was 1221 Main Street and again unsuccessfully tried to buy a crystal.

In the meantime an employee of the second North Little Rock store at which petitioners had called notified the Little Rock police of what petitioners were doing and advised that they might go to the Main Street store in Little Rock. The caller furnished the Little Rock police with a description of petitioners and of the vehicle in which they were riding.

Detectives Goodwin and Powers of the Little Rock Police Department proceeded to the Main Street address and intercepted petitioners as they emerged from the store. At that time the officers knew nothing about the petitioners, except what they had been told by the North Little Rock informant; they had no warrant for the arrest of petitioners, no knowledge of petitioners' past criminal record, and no reason to believe that petitioners had committed a felony.

Explanations of their activities being unsatisfactory to the officers, petitioners were advised that they would be taken to the police station for questioning. Originally, it was planned that Officer Powers would drive Satterfield to the station in the police car, and that Officer Goodwin would ride to the station with Brown in the station wagon. Brown and Goodwin entered that vehicle, but Brown was not able to start it. The station wagon was then relocked, and all four men went to the police station in the police car.

A suspicious action on the part of Satterfield during initial questioning and related activities led to an examination of his shoes and the discovery of his hack saw blade; the shoes of Brown were then searched, and his blade was found. Both men were then required to remove their clothing so that their garments could be searched, and they were questioned for some time while nude. It is not suggested that either petitioner was subjected to physical harm or threatened with physical violence.

The two men were questioned in separate interrogation rooms and after the questioning had proceeded for a period of time, the length of which is disputed, Brown, according to Detective Goodwin, was advised by that officer that petitioners would be held for further investigation, and that it would be necessary in the course of the investigation to search the station wagon. Goodwin testified that Brown thereupon suggested that the search be made immediately. Brown denies that any such colloquy took place or that he ever authorized, consented to, or suggested a search of the station wagon.

In any event, Goodwin went back to where the station wagon was parked, unlocked it, and examined the contents. That examination brought to light two pistols, a "nail puller," a punch, a keyhole saw, two screw drivers, and a quilt or blanket similar to those used in handling and moving furniture, but which, according to Goodwin, was adapted for use by a burglar in muffling the noise of his illegal activities.

Goodwin took possession of the articles in question, and petitioners were subsequently confined in the Little Rock city jail until May 19 when they were then and there charged for the first time with the possession of burglar tools. The Municipal Judge bound petitioners over to the Circuit Court and fixed bond in the sum of $10,000 for each petitioner, which bonds they were unable to make.

Petitioners were transferred to the Pulaski County jail, and in due course

formal charges were filed against them in the Circuit Court. The Circuit Judge appointed counsel to represent them; they were arraigned and pleaded not guilty. In July 1964 petitioners were tried to a jury and found guilty. In the course of the trial the State introduced in evidence the hack saw blades found in the shoes of petitioners and also introduced the materials taken from the station wagon. That evidence was received without objection from petitioners or their attorney.

After petitioners had been sentenced and transferred to the penitentiary, they filed a pleading of some sort in the Circuit Court. That pleading, prepared by petitioners themselves, was treated by the Circuit Judge as a motion for a new trial. After a hearing that motion was denied. The record before this Court does not contain a copy of the motion just mentioned, but petitioners say that it raised the question of the legality of the search of the station wagon and the seizure of its content. The Court will accept that testimony as true for purposes of this opinion.

█  When their motion for a new trial was overruled, petitioners prayed and were granted an appeal to the Supreme Court of Arkansas. They requested that counsel be appointed to prosecute their appeal, but that request was denied by the trial court. Petitioners say in their petition that after they were returned to the penitentiary, they undertook to perfect their own appeal but were frustrated in their effort by prison authorities. Petitioners made no effort to prove the truth of that allegation, which was denied in the answer, and the Court is not willing to presume that it is true. It is to be noted that petitioners appear never to have requested the Supreme Court of Arkansas to appoint counsel to prosecute their appeal from the Circuit Court judgment. That judgment has never been appealed, nor has it ever been attacked collaterally in the State courts of Arkansas.

█  Under Arkansas law a peace officer may make an arrest without a warrant where a public offense is committed in his presence or where he has reasonable grounds for believing that the person arrested has committed a felony. Ark.Stats., Ann., § 43–403. As far as the record shows and as far as the Court knows, it is not a public offense for a person to listen to police radio broadcasts or to purchase or try to purchase a device which will enable him to do so. Certainly, such acts are not felonies, and, as stated, the Little Rock police officers had no reason to believe when they arrested petitioners that either of them had committed any felony.

█  Since the decision of the Supreme Court of the United States in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, 84 A.L.R.2d 933 it has been settled that the admission of evidence in the course of a State criminal trial of materials unlawfully seized by State officers following an unlawful search amounts to a denial of due process of law. The force of Mapp was recognized by the Supreme Court of Arkansas in Gerard v. State, 237 Ark. 287, 372 S.W.2d 635, and in Williams v. State, 237 Ark. 569, 375 S. W.2d 375.

█  A search of one's person or premises may be made lawfully without a warrant if the search is actually incident to a lawful arrest. But in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, the Supreme Court held that where officers have apprehended and confined a suspect, and have his vehicle in custody or under control so that there is no danger of the vehicle or its contents being removed pending the issuance of a search warrant, a search of the vehicle without a warrant, not substantially contemporaneous with the arrest, cannot be justified as "incidental to the arrest" and is unreasonable and illegal. In numerous cases involving both State and federal prosecutions the Preston rule has been held to be either applicable or inapplicable depending upon the facts of the particular case. See Haas v. United States, 8 Cir., 344 F.2d 56; Caldwell v. United States, 8 Cir., 338 F.2d 385; Crawford v. Bannon, 6

Cir., 336 F.2d 505; Sisk v. Lane, 7 Cir., 331 F.2d 235. It should be noted that Preston was decided about two months before the arrest of petitioners so the record probably does not present any problem of retroactive application of Preston. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, and Sisk v. Lane, supra, both holding that Mapp v. Ohio, supra, is not to be applied retroactively. Since Preston is the offspring of Mapp as far as State prosecutions are concerned, the Linkletter holding, supra, may well apply to the Preston case.

■ When the prosecution seeks to justify a search which would ordinarily be deemed illegal by invoking an alleged authorization of or consent to the search by the suspect or accused, the Courts will at least scrutinize closely the authorization or consent relied upon if given while the suspect or accused is in custody or under the direct control of the officers who obtained the consent or authorization. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Smith, 2 Cir., 308 F.2d 657; Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649. Cf. United States v. Roberts, E.D.Ark., 223 F.Supp. 49, aff'd Roberts v. United States, 8 Cir., 332 F.2d 892.

■ Ordinarily, if incompetent evidence is offered by the State in a criminal prosecution, the defendant must object at the time of the offer or as soon thereafter as practicable; he may not generally sit by and permit the evidence to come in, speculate on the jury's verdict, and then if the verdict turns out to be unfavorable raise the question of the admissibility of the evidence for the first time on appeal or by way of motion for a new trial. A State has a legitimate interest in such a rule of procedure, and if a defendant fails to comply with it, and if the highest court of the State affirms the judgment on the basis of such failure, the Supreme Court of the United States on direct review by certiorari may find that the ultimate State court decision was based on an adequate non-federal ground and may refuse to inquire into the question of admissibility which was not raised when it should have been. See Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408.

■ However, the approach which the Supreme Court of the United States may take on direct review of a State court conviction would not seem open to a federal district court when a State court judgment is attacked collaterally in a habeas corpus proceeding. This is true because in a collateral attack a failure on the part of the defendant to observe State procedural requirements does not bar consideration of a federal constitutional claim unless the failure amounted to a binding waiver of the federal right. Henry v. Mississippi, supra. And failure of counsel in the State court to object to allegedly incompetent evidence may or may not amount to an effective waiver of his client's constitutional right to be free from unreasonable searches and seizures. Henry v. State of Mississippi, supra; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

■ A final principle to be mentioned is that the 14th Amendment now requires the States in felony cases to provide indigent defendants with appellate counsel as well as with counsel to represent them in the course of the initial trial. Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811.

■ When the facts in the instant case are considered in the light of the principles which have been mentioned, it would seem that the validity of the Circuit Court judgment of which petitioners complain may well be doubtful; certainly the questions raised by the petition and the evidence are substantial, as is the question raised by petitioners as to whether the attorney-client privilege prevents respondent from showing that the failure of petitioners' trial counsel to object to the introduction of the challenged evidence was a deliberate "trial strategy" decision understood and concurred in by his clients.

However, in view of the provisions of 28 U.S.C.A., § 2254, the Court considers that those questions should be answered first by the Arkansas State courts. That section provides in substance that in cases other than exceptional a State prisoner may not collaterally attack in a federal court the State court judgment whereby he is confined if adequate State corrective processes are available. Although respondent has not expressly pleaded section 2254, and although that section is not jurisdictional in the strict sense of the term, the Court does not think that it should be ignored.

Petitioners, as has been said, have never attacked the Circuit Court judgment collaterally in the State courts. Comparatively recently in Johnson v. Stephens, E.D.Ark., 231 F.Supp. 995, this Court concluded that Arkansas has available post-conviction procedures whereby a prisoner in the Arkansas penitentiary can collaterally attack his State court conviction on the ground that it was obtained in violation of the Due Process Clause of the 14th Amendment. And, just a few days ago the Supreme Court of Arkansas formally promulgated a rule of practice essentially similar although not identical to the federal post-conviction review provisions of 28 U.S.C.A., § 2255.

That rule provides that a criminal conviction may be attacked collaterally in the sentencing court, and one of the recognized grounds for such an attack is "that the sentence was imposed in violation of the Constitution and laws of the United States or this State * * *." Rules of Criminal Procedure Ark. rule 1. It is further provided that if the conviction sought to be attacked collaterally was appealed initially to the Supreme Court of Arkansas, leave of that Court must be obtained before a collateral attack may be launched in the Circuit Court. It is still further provided that the Circuit Courts may appoint counsel for indigent petitioners in connection with the proceedings in those courts and in connection with appeals to the Supreme Court; the Circuit Courts are permitted to award

fees to appointed counsel to the extent possible under Arkansas law. See Act 276 of 1953, Ark.Stats., Ann., § 43–2415 et seq.

It thus appears that petitioners now have an adequate and available remedy in the courts of Arkansas whereby they may test out in those courts the constitutional questions which they have raised here, and the Court feels that they should be required to utilize that remedy.

The petition will be denied without prejudice to future action here should petitioners' application to the State courts for relief turn out to be unsuccessful.