UNITED STATES of America ex rel. William H. KING, Petitioner,

v.

Raymond W. ANDERSON, Warden, New Castle Correctional Institution, Respondent.

No. 51.

United States District Court
D. Delaware.
Sept. 20, 1966.

for the State of Delaware on a charge of attempting to bribe a State official. The trial was held on June 24 and 25, 1963. Sentence was imposed on February 12, 1964. Petitioner took a direct appeal from his conviction to the Supreme Court of Delaware on issues not relevant to the instant petition. Petitioner's appeal was dismissed on July 17, 1964, in King v. State of Delaware, Del., 203 A.2d 74.

Shortly thereafter, petitioner filed a motion to correct an illegal sentence under Delaware Superior Court Rule 35, based on the admission, by the trial court, of certain allegedly illegally obtained admissions of petitioner made to the police prior to his arrest. This motion was primarily based on the decision of the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, handed down on June 9, 1964. In the Rule 35 motion, petitioner contended that his conviction should have been set aside because, under the *Escobedo* case, supra, he had a constitutional right to counsel during the interrogation which produced the statements in question, and that violation of that right rendered inadmissible the incriminatory statements.

On July 23, 1965, the Delaware Supreme Court affirmed the dismissal of petitioner's Rule 35 motion, holding that the facts of petitioner's case did not fit within the *Escobedo* ruling. King v. State of Delaware, Del., 212 A.2d 722.

On September 10, 1965, a ten-day sentence was imposed on petitioner and, on the same day, this petition was filed.

The facts underlying this petition are as follows:

King is a high school graduate and operates a real estate agency in the City of Wilmington. Trooper Waller, of the Delaware State Police, visited him at his home one evening to investigate a charge by Deputy State Insurance Commissioner Ralph Rago that petitioner King had attempted to bribe Rago. Petitioner was reluctant to go to the police station that evening and arranged to meet Trooper Waller and Chief Deputy Attorney General Veasey the next morn-

Victor F. Battaglia, Theisen & Lank, Wilmington, Del., for petitioner.

Michael N. Castle, Deputy Atty. Gen., for State of Delaware, Wilmington, Del., for respondent.

## OPINION

LAYTON, District Judge.

This is a petition for a writ of habeas corpus.

Petitioner, William H. King, was convicted by a jury in the Superior Court

ing at Veasey's office to discuss the charge.

After the above arrangements had been made, a short conversation took place, relating to the possibility that King would bring counsel to the meeting in the Attorney General's office. King's version of the conversation was that Trooper Waller asked, "You won't consult no [sic] attorney, would you?" King answered, "No, I won't consult an attorney."

Trooper Waller's recollection of the conversation serves to amplify, rather than dispute, the substance of what was said. Waller recalls that King stated, "Well, I guess I had better call an attorney." Waller replied, "Well, that is your privilege. You can call an attorney. I can't stop you, but probably I can tell you what the attorney would tell you. He would tell you not to say anything, and then you don't tell me anything and this means then that it is not going to stop the investigation and we will just go ahead with the evidence that we have got without your presenting your side of the story to me."

The next morning, petitioner went by himself to the office of the Attorney General, and recorded a taped statement in the presence of Trooper Waller and Prosecutor Veasey. At the beginning of the interview, Mr. Veasey advised defendant that he did not have to make any statement and that it was being made without any threats or promises of any kind. Defendant acknowledged that this was so. The interview was courteously conducted in every respect. In the recorded statement, King admitted placing money on a table in front of Rago, and offering the money to Rago. King was asked several times about his motives in doing these acts. At best, he seemed to be confused as to precisely why he had placed money on the table and offered it to Rago. His last answer to this question is typical, "I imagine there wasn't any intention, Mr. Veasey, besides being a big shot about it all. It just happened to be at the time he did come in I did have the money on me, but—ah, I think it was

impression, the only thing else that I can say, but—ah, nobody was instrumental in giving me money or putting me up to doing anything like this."

King's statement, transcribed from the tape recording, was introduced at trial. King's defense counsel agreed that the statement was admissible. King's defense to the charges of bribery was not a denial of the State's description of his actions but was an interpretation of his motives in placing the money before Rago. In essence, King claimed that the whole transaction was a joke. The jury found otherwise.

It must be emphasized that no objection was made to the introduction of the statement into evidence, despite the fact that the trial judge expressly raised this question twice to defense counsel. The statement was not necessarily damning, and it was not necessarily exculpatory. The defense was based on one interpretation of King's actions, the prosecution on another.

Prior to the submission of petitioner's reply brief in the instant action, the U. S. Supreme Court held argument in the case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and related cases. Counsel for petitioner and respondent agreed to delay final proceedings in the instant case until the central issues of the petition could be clarified by the U. S. Supreme Court.

On June 20, 1966, the U. S. Supreme Court handed down the decision in Johnson and Cassidy v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, which limited the protection of the *Escobedo* decision to those whose trials began after June 9, 1964. Because petitioner's trial was completed almost a full year before this date, on June 25, 1963, petitioner may not rely on the protective guidelines set forth in *Escobedo*.

As a result of the *Johnson* decision, supra, petitioner no longer relies on the right-to counsel guarantee of the Sixth Amendment, but has switched Amendments in mid-appeal, and now relies on

the Fifth Amendment protection against compulsory self-incrimination.

The thrust of petitioner's argument, at this point, is that he was coerced into making a statement without benefit of counsel by the threat of Trooper Waller that the State would " * * * go ahead with the evidence that we have got without you presenting your side of the story to me. * * *" Petitioner thus contends that he was intimidated by the implied threat of sanctions of arrest, indictment, and trial, and felt that his only practical course of action was to follow the "friendly advice" of Trooper Waller and make a statement before obtaining counsel.

█ This Court is unable to reach a consideration of the merits of this argument at this time for the reason that petitioner has not exhausted his state remedies on this issue. First, the question of voluntariness was never raised in the Delaware State Courts.[1] Since this issue has never been ruled upon by any Delaware Court, it may not be presented to this Court in a petition for a writ of habeas corpus because of the requirement of exhaustion of state remedies. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837.

█ In addition, petitioner may be precluded from raising the question of voluntariness, for he may have knowingly waived this claim when his counsel failed to object to the admission of the statement during trial. The question of waiver must be determined first by the Delaware courts, also, presumably in a Rule 35 proceeding. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Ellenson v. Fugate, 346 F.2d 151, 152 (8 Cir. 1965); United States v. LaVallee, 238 F.Supp. 265, 266 (N.D.N.Y.1965); Brown v. Stephens, 246 F.Supp. 1009, 1013–1014 (E.D.Ark. 1965).

Accordingly, the petition for a writ of habeas corpus is denied without prejudice to future action here should petitioner's application to the State Courts for relief turn out to be unsuccessful. Meantime, execution of the ten day sentence should, of course, be withheld.

---

[1] Petitioner's Rule 35 proceeding in the State Courts was directed only to petitioner's Sixth Amendment rights under *Escobedo*. Petitioner's attorney stated at the Rule 35 hearing, " * * * it is our position that the manner of taking this statement does not meet with the requirements of the *Escobedo* decision with respect to the guarantee of right to counsel and that, therefore, the use of that statement at the trial was a violation of due process." Hearing transcript, p. 36.